[No. 41148-9-I.    Division One.    July 12, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. DALE LYON, *Appellant*.

BAKER, J. — Dale Lyon's ex-girlfriend, who had allowed him to stay at her residence, found Michael Courtney bludgeoned but still alive inside her home. The police lo-

cated Lyon the next morning after he was assaulted by two individuals. Lyon agreed to go to the police station to give a statement regarding that morning's assault. After police detectives concluded the interview concerning that assault, they told Lyon that they thought he was involved in an assault on Courtney and that they thought Lyon might have struck Courtney in self-defense. Lyon admitted that he was involved in the assault on Courtney, was advised of his rights, and agreed to provide a tape-recorded statement. Lyon then told the detectives that he struck Courtney with a wooden closet rod. Courtney later died. Lyon was convicted of second degree murder. Lyon appeals, contending that he was entitled to an instruction for second degree assault as a lesser included crime, because there was evidence that another person caused Courtney's death after he left the apartment. We agree that Lyon was entitled to the instruction under the unusual facts of this case. We thus reverse and remand for a new trial.

I

Dale Lyon's ex-girlfriend had allowed Lyon to stay in her apartment during the preceding three weeks, and mistakenly assumed that Lyon was the injured person she discovered in her apartment when she spoke with the police. After the injured person was later identified as Michael Courtney, the police wanted to locate and interview Lyon.

Lyon was located the next morning when the police were dispatched to investigate a disturbance. Lyon had been assaulted by two individuals, allegedly over his failure to pay for illegal drugs that he took. Lyon was taken to the hospital, where he was contacted by a police detective. Upon his release from the hospital, the detective asked Lyon to go to the police station to give a statement regarding the assault that led to his injuries.

Lyon agreed to go to the police station, and police detectives interviewed Lyon about that morning's assault. After

concluding their interview about the assault on Lyon, the detectives left Lyon in the interview room and devised a plan to get him to discuss his whereabouts and activities over the past few days. The detectives then told Lyon that they thought he was involved in an assault on Courtney and that they thought Lyon might have struck Courtney in self-defense. Lyon eventually gave the detectives details about his involvement in the assault on Courtney, was advised of his rights, and agreed to provide a tape-recorded statement. Lyon then admitted he struck Courtney with a wooden closet rod and fled the apartment, hiding from individuals whom he feared were "coming to get me."

Courtney died a few days after Lyon gave his statement to the police. The information against Lyon reads, in part:

COUNT I: SECOND DEGREE MURDER, committed as follows: That the defendant, on or about the 12TH day of MAY, 1996, while committing or attempting to commit the felony crime of SECOND DEGREE ASSAULT, and in the course of or in furtherance of said crime or in immediate flight therefrom, did cause the death of MICHAEL ROERHIG COURTNEY, a human being, not a participant in such crime, said death occurring on or about the 17TH day of MAY, 1996; and that at the time of the commission of the crime, the defendant or an accomplice was armed with a deadly weapon other than a firearm, to wit: a wood closet dowell [sic], as provided and defined in RCW 9.94A.310, and RCW 9.94A.125; proscribed by RCW 9A.32.050(1)(b), a felony.

At trial Lyon presented evidence that another individual came to his ex-girlfriend's apartment and proximately caused the death of Michael Courtney after the initial assault. The trial court refused a defense request to instruct on second degree assault, and the jury found Lyon guilty of second degree murder.

## II

█ Lyon argues that the trial court erred in refusing to instruct on second degree assault as a lesser included crime of the second degree felony murder charged on the predi-

cate felony of second degree assault. The right to a lesser included offense instruction is, in some cases, a statutory right.[1] The right is based upon RCW 10.61.006, which states that "[i]n all other cases the defendant may be found guilty of an offense the commission of which is necessarily included within that with which he is charged in the indictment or information."[2] Either the defense or the prosecution may request a lesser included offense instruction.[3]

*State v. Workman*[4] set forth a two-pronged test requiring the satisfaction of both legal and factual conditions before a party is entitled to a lesser included offense instruction as a matter of right. Under the legal prong of the *Workman* test, "each of the elements of the lesser offense must be a necessary element of the offense charged."[5] Under the factual prong of the *Workman* test, the evidence in the case must support an inference that only the lesser crime was committed.[6] Ordinarily, the factual prong of *Workman* would not be met in a felony murder case. But here there was evidence from which a jury could conclude that the death resulted from a later, unrelated assault by another person. The State concedes that the factual prong was met here.

In the recent case of *State v. Berlin*, which reaffirmed the *Workman* test, our Supreme Court held that the requirements of constitutional notice and the ability to argue the theory of a case both dictate that "lesser included offense analysis is applied to the offenses as charged and prosecuted, rather than to the offenses as they broadly appear in statute."[7] The court rejected statements in earlier cases which held that the correct analysis to apply in the lesser

---

[1]*See State v. Bowerman*, 115 Wn.2d 794, 805, 802 P.2d 116 (1990).

[2]*See State v. Tamalini*, 134 Wn.2d 725, 728, 953 P.2d 450 (1998).

[3]*Tamalini*, at 728.

[4]90 Wn.2d 443, 447-48, 584 P.2d 382 (1978).

[5]*Id.*

[6]*State v. Fernandez-Medina*, 94 Wn. App. 263, 971 P.2d 521 (1999).

[7]*State v. Berlin*, 133 Wn.2d 541, 548, 947 P.2d 700 (1997).

included offense context was to look to " 'the elements of the pertinent charged offenses as they appeared in the context of the broad statutory perspective, and not in the more narrow perspective of the offenses as prosecuted.' "[8]

We note that the Supreme Court, in the later case of *State v. Tamalini*,[9] reaffirmed a portion of its analysis in the earlier case of *State v. Davis*[10] which held that manslaughter cannot be a lesser included offense of felony murder because the mental element of the crime of manslaughter differs from that of felony murder. Because all of the elements of the lesser offense are not necessary elements of the greater offense, the legal prong of the *Workman* test cannot be satisfied. In the course of its discussion, the *Tamalini* court described its holding in *Davis* as concluding "that there are no lesser included offenses to second degree felony murder."[11] But that portion of the *Davis* holding was specifically disapproved in *Berlin*. We do not read the *Tamalini* court's description of that aspect of the *Davis* holding as signaling, in any way, a retreat from the court's careful review and holding in *Berlin*. Lesser included offense analysis requires us to look "to the offenses as charged and prosecuted."

The charging document accused Lyon of committing second degree murder while committing or attempting to commit second degree assault. The State abandoned the "attempted" language and proceeded to trial based upon the actual commission of a second degree assault. Thus the statutory elements of the offense "charged and prosecuted" here included a completed second degree assault. Because a lesser included offense instruction should have been given under these circumstances, we reverse and remand for a new trial.

---

[8]133 Wn.2d at 547 (quoting from *State v. Lucky*, 128 Wn.2d 727, 734, 912 P.2d 483 (1996)).

[9]134 Wn.2d 725, 953 P.2d 450 (1998).

[10]121 Wn.2d 1, 846 P.2d 527 (1993).

[11]*Tamalini*, 134 Wn.2d at 729 (quoting from *Davis*, 121 Wn.2d at 6).

452

Lyon also contends that the jury instructions on deadly weapons erroneously allowed the jury to consider weapons other than the wooden closet rod specified in the information. Because we reverse and remand for a new trial, we need not reach the merits of this issue. However, we note that this issue can be avoided in the future by a timely amendment to the information.[12]

Reversed.

AGID, A.C.J., and COLEMAN, J., concur.

After modification, further reconsideration denied August 18, 1999.

Review denied at 140 Wn.2d 1003 (2000).

---

[12]We find no abuse of discretion in the challenged evidentiary rulings of the trial court. Nor is there any merit in Lyon's challenge to the adequacy of the "to convict" instruction given by the court.