56 P.3d 981 (2002)
147 Wash.2d 602
In re PERSONAL RESTRAINT Petition OF Shawn ANDRESS, Petitioner.
No. 71170-4.
Supreme Court of Washington, En Banc.
Argued March 12, 2002.
Decided October 24, 2002.
As Corrected October 29, 2002.
*982 MacDonald, Hoague & Bayless, Timothy Ford, Seattle, for Petitioner.
Norm Maleng, King County Prosecutor, James Whisman, Deputy, Deborah Dwyer, Deputy, Lee Yates, Deputy, Seattle, for Respondent.
Patricia Novotny, Seattle, Amicus Curiae on Behalf of WACDL.
MADSEN, J.
Personal restraint petitioner Shawn Andress was convicted of second degree felony murder. He urges this court to reconsider whether assault can serve as the predicate felony for second degree felony murder. We agree that the time has come to reassess this question. We conclude that in light of a change in the second degree felony murder statute that we have not previously considered in the context here and decisions that together illuminate the illogic of a conviction of second degree felony murder where assault is the predicate crime, assault cannot serve as the predicate felony for second degree felony murder. Accordingly we grant Andress's personal restraint petition on this issue, vacate his conviction for second degree felony murder, and remand for resentencing consistent with our opinion.

FACTS
Andress became involved in a fight outside a bar with Eric Porter and Edwin Foster. After the fight had continued for a time, Porter saw Foster stumble off holding his chest, and a little later Porter realized that both he and Foster had been stabbed by Andress. Foster died from the stabbing. The State charged Andress with second degree intentional murder and second degree felony murder with assault in the second degree as the predicate felony, arising from the stabbing of Foster, and first degree assault, arising from the stabbing of Porter; the information alleged that Andress committed each of these offenses while armed with a deadly weapon. In an amended information, the State dropped the second degree intentional murder alternative, leaving only the second degree felony murder charge predicated on assault as the underlying felony. The jury found Andress guilty of second degree felony murder (Foster) and second degree assault (Porter). The jury also returned a deadly weapon verdict on each count.
Andress appealed, and the Court of Appeals affirmed his convictions in an unpublished opinion. This court denied discretionary review of the Court of Appeals decision. State v. Andress, 138 Wash.2d 1002, 984 P.2d 1034 (1999). Andress filed a personal restraint petition, which the Acting Chief Judge of the Court of Appeals dismissed. Andress then sought discretionary review, RAP 16.14(c), which we granted only on the question whether assault may serve as the predicate felony for second degree felony murder.

ANALYSIS
Andress raises both constitutional and nonconstitutional challenges to his felony murder conviction. We turn to the nonconstitutional challenge first. Where a personal restraint petitioner asserts nonconstitutional grounds for relief from personal restraint, the petitioner "must establish (1) he or she is being unlawfully restrained, (2) due to a `fundamental defect which inherently results in a complete miscarriage of justice.'" In re Pers. Restraint of Fleming, 129 Wash.2d 529, 532, 919 P.2d 66 (1996) (quoting In re Pers. Restraint of Cook, 114 Wash.2d 802, 812, 792 P.2d 506 (1990)). Andress maintains that when the Legislature changed the wording of the second degree felony murder statute in 1975, it became clear that assault could not serve as the predicate felony. We agree that the language of the statute, particularly in light of decisional law, does not encompass assault as a predicate felony. Our conclusion results from a careful review of the history of this question and the relevant statutory and decisional law that has developed since this court first rejected the argument that assault cannot serve as the predicate felony to felony murder. Since we agree that Andress is entitled to relief from personal restraint *983 based upon his nonconstitutional challenge, we do not reach the constitutional challenges he raises.
In 1966, this court first considered whether the felony murder rule should apply to homicides where the predicate felony is an assault on the person killed. State v. Harris, 69 Wash.2d 928, 421 P.2d 662 (1966). The court noted that the felony murder doctrine originated in the common law as early as 1536 in England. Id. at 931, 421 P.2d 662 (citing Albert E. Arent & John W. MacDonald, The Felony Murder Doctrine and its Application under the New York Statutes, 20 CORNELL L.Q. 288, 289 (1935); Mansell & Herbert's Case, 2 Dyer 128b (1536)). At the time the doctrine was first recognized, nearly all felonies were punishable by death. Harris, 69 Wash.2d at 931, 421 P.2d 662; see WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 7.5(a) (2002). As time passed, offenses that once were characterized as misdemeanors and gross misdemeanors were made felonies by statutory enactments, and as a result the common law rule became too harsh. This harshness was ameliorated in American jurisdictions in several ways, including limitations requiring that the defendant's actions proximately or legally cause the victim's death, that the attempted or completed predicate felony be dangerous to life, that the predicate felony be independent of the homicide, or that strict interpretation be made of the requirement that the death occur in the commission or attempted commission of a felony. Id. Limiting the felony murder rule to certain predicate felonies has taken various forms, with Washington limiting first degree felony murder to crimes that were generally felonies at common law, i.e., robbery in the first or second degree, rape in the first or second degree, burglary in the first degree, arson in the first or second degree, kidnapping in the first or second degree. RCW 9A.32.030(c); see LaFave & Scott, supra. However, the second degree felony murder statute is not similarly restricted; instead, the statute refers to "any felony other" than those referred to in the first degree felony murder provision. RCW 9A.32.050(b).
In Harris, the court was asked to adopt New York's "merger rule," that is, "the precedent felony, if an assault on the person killed, is merged in the resulting homicide." Harris, 69 Wash.2d at 932, 421 P.2d 662. Put another way, an assault cannot be the predicate felony for felony murder because it is not a felony independent of the homicide. The court declined to adopt the assault-felony murder merger rule, reasoning that the statutory schemes of Washington and New York were sufficiently distinct that the justification for the rule in New York did not apply in Washington. As the court observed, under New York law practically all cases of homicide resulted directly or indirectly from an assault. Id. Every homicide that was not justifiable or excusable would amount to first degree felony murder in the absence of the merger rule, with the result being that "all the second-degree murder and manslaughter statutes would have been emasculated." Id. at 933, 421 P.2d 662. Further, the court noted, absent the merger rule, it would never be necessary in New York to show intent to kill, deliberation or premeditation because every murder could be charged as first degree felony murder. Id. The court in Harris concluded that the same was not true in Washington, given the Legislature's specific designation of felonies that would result in a first or second degree felony murder charge. The court did note, though, that the felony murder doctrine might be in need of reform in Washington, but not in a case, such as Harris, where the defendant had, with gun in hand, threatened to kill several people, pointed the gun at one, and pulled the trigger. Harris, 69 Wash.2d at 934, 421 P.2d 662. The court added that the defendant was fortunate not to have been charged with first degree murder. Id.
The court subsequently adhered to its decision rejecting the merger rule. E.g., State v. Wanrow, 91 Wash.2d 301, 306-10, 588 P.2d 1320 (1978); State v. Thompson, 88 Wash.2d 13, 23, 558 P.2d 202 (1977). In Wanrow, the court again considered Washington's statutory scheme, concluding that it did not support adoption of the merger rule.[1] In Thompson, *984 however, the court recognized that "[m]ost states which have considered the question have adopted the merger rule, resulting in a holding that only felonies independent of the homicide can support a felony murder conviction." Id., 88 Wash.2d at 17, 558 P.2d 202.
Harris, Wanrow, and Thompson all involved a prior version of the second degree felony murder statute, which provided:
The killing of a human being, unless it is excusable or justifiable, is murder in the second degree when
(1) Committed with a design to effect the death of the person killed or of another, but without premeditation; or
(2) When perpetrated by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a felony other than those enumerated in [former] RCW 9.48.030.
Former RCW 9.48.040 (1974). Subsection (2) defined the crime of second degree felony murder.
Former RCW 9.48.040 was replaced effective July 1, 1976, when the Legislature recodified some criminal statutes, amending some of them at the same time. Laws of 1975, 1st Ex.Sess. ch. 260, § 9A.32.050 (effective July 1, 1976, see Laws of 1975, 1st Ex.Sess. ch. 260, § 9A.04.010); Laws of 1975-76, 2d Ex. Sess. ch. 38, § 4. The new statute defining second degree felony murder is the same version in effect now. It provides in relevant part:
(1) A person is guilty of murder in the second degree when:
(a) With intent to cause the death of another person but without premeditation, he causes the death of such person or of a third person; or
(b) He commits or attempts to commit any felony other than those enumerated in RCW 9A.32.030(1)(c), and, in the course of and in furtherance of such crime or in immediate flight therefrom, he, or another participant, causes the death of a person other than one of the participants .... RCW 9A.32.050. Following passage of the amended version of the second degree felony murder statute, subsection (b), the court continued to reject arguments that assault cannot be used as the predicate felony for second degree felony murder. In Thompson, decided in 1977, the court noted that the Legislature had recently modified parts of the criminal code, but said that it left unchanged the statutory context in question. Thompson, 88 Wash.2d, at 17-18, 558 P.2d 202. Similarly, in Wanrow, decided in 1978, the court noted in one part of the opinion that former RCW 9.48.040 had been superseded, Wanrow, 91 Wash.2d at 304, 588 P.2d 1320, but said that the Legislature had taken no steps to change the Harris rule, Wanrow, 91 Wash.2d at 307, 588 P.2d 1320.
However, the court did not address in either case, nor has it ever addressed, the specific language of the amended statute in connection with the argument again advanced in this case. This is not surprising, because the statutorily-based challenges in Harris, Thompson, and Wanrow were all brought by defendants convicted under the prior version of the second degree felony murder statute, former RCW 9.48.040. We are thus faced with a change in the language of the statute which has never been specifically analyzed in the context here.
We have, however, had occasion to interpret the new language in the felony murder statutes in one other context (the first degree felony murder statute has the same "in furtherance of language that the second degree felony murder statute has). In State v. Leech, 114 Wash.2d 700, 790 P.2d 160 (1990), the defendant was convicted of first degree felony murder with arson as the predicate felony. A fire fighter was killed after the arson fire was set and before the fire was extinguished. The defendant contended that the death did not occur in the course of and in furtherance of the arson, because the defendant did not cause the death in acting to promote or advance the arson. Leech, 114 Wash.2d at 706, 790 P.2d 160. Relying on a leading treatise, and to avoid absurd results, we concluded that the "in furtherance of" *985 language must be construed to mean that the death "was sufficiently close in time and place to the arson to be part of the res gestae of that felony." Id., 114 Wash.2d at 709, 790 P.2d 160. The absurd results that would have followed if defendant's argument that the "in furtherance of" language applied only to the time when the arson fire was set would be that an arsonist whose fire killed would almost never be liable for murder. Id., 114 Wash.2d at 709, 790 P.2d 160. That would not effectuate the purpose of the first degree felony murder statute where arson is the predicate felony; indeed, it would be contrary to manifest legislative purpose. See RCW 9A.32.030(1)(c) (listing "arson" as a predicate felony).
Although Andress contends that we should accept a different interpretation of the "in furtherance of" language in this case, we decline to do so. The reasons for the construction of that language in Leech are still as compelling today as when Leech was decided. However, applying the construction from Leech leads to the conclusion that an assault on the person killed is not encompassed within the newer version of the second degree felony murder statute. If it were, the statute would provide, essentially, that a person is guilty of second degree felony murder when he or she commits or attempts to commit assault on another, causing the death of the other, and the death was sufficiently close in time and place to the assault to be part of the res gestae of assault. It is nonsensical to speak of a criminal act an assaultthat results in death as being part of the res gestae of that same criminal act since the conduct constituting the assault and the homicide are the same. Consequently, in the case of assault there will never be a res gestae issue because the assault will always be directly linked to the homicide. Therefore, if assault were encompassed within the unenumerated felonies in RCW 9A.32.050(1)(b), the "in furtherance of" language would be meaningless as to that predicate felony. In short, unlike the cases where arson is the predicate felony, the assault is not independent of the homicide.
As this court said in Leech when construing the "in furtherance of" language in the felony murder statutes, "`statutes should be construed to effect their purpose, and strained, unlikely, or absurd consequences resulting from a literal reading are to be avoided.'" Leech, 114 Wash.2d, at 708-09, 790 P.2d 160 (quoting State v. Neher, 112 Wash.2d 347, 351, 771 P.2d 330 (1989)). We will not construe a statute to reach an absurd result because we do not presume that the Legislature intended absurd results. State v. Vela, 100 Wash.2d 636, 641, 673 P.2d 185 (1983); State v. Gaines, 109 Wash. 196, 200, 186 P. 257 (1919); see also In re Pers. Restraint of Davis, 142 Wash.2d 165, 177, 12 P.3d 603 (2000); State v. Ammons, 136 Wash.2d 453, 457-58, 963 P.2d 812 (1998); Leech, 114 Wash.2d at 708-09, 790 P.2d 160; Neher, 112 Wash.2d at 351, 771 P.2d 330; In re Pers. Restraint of Lehman, 93 Wash.2d 25, 27, 604 P.2d 948 (1980). The "in furtherance of" language is strong indication that the Legislature does not intend that assault should serve as a predicate felony for second degree felony murder.
The State contends, contrary to this conclusion, that the Legislature has affirmatively declined to omit assault from the felonies encompassed by RCW 9A.32.050(1)(b). We do not agree.
The State says that during the recodification process of the 1970s a draft code (the "Orange Code") was prepared that would have excluded assault as a basis for felony murder. The State concludes that the Legislature rejected elimination of assault (as well as manslaughter) as a predicate felony when it instead adopted the present version of the felony murder statute. The argument is unpersuasive. First, even where an actual bill is before the Legislature, we generally decline to speculate as to why the Legislature rejects a proposed amendment. E.g., Spokane County Health Dist. v. Brockett, 120 Wash.2d 140, 153, 839 P.2d 324 (1992). Second, the principle that the court refuses to speculate applies with added force, because there are numerous other aspects of the proposed draft that legislators might have found objectionable. The "Orange Code" provision at issue defined "murder" in a way that significantly departed from previous law in many respects, aside from expressly *986 providing that assault could not serve as a predicate felony for felony murder. The proposed draft provision made murder a "degreeless" crime, did away with premeditation, defined reckless endangering as the basis for a murder conviction only where the conduct endangered several persons, not just one, limited the felony murder rule to only the actual killer and not fellow accomplices, limited felony murder to killings in the commission of forcible felonies, and imposed a required mental state, recklessness, for any killing serving to ground the felony murder rule. Suppl. Br. of Resp't App. A. Given such a sweeping proposed overhaul of the murder statutes, there are numerous aspects of the draft felony murder provision that legislators may have found objectionable. Therefore, even if we were to treat the draft provision as an amendment rejected by the Legislature, we cannot conclude that the fact that the draft provision was not enacted as law means that the Legislature affirmatively rejected one of many changes proposed. See Leeper v. Dep't of Labor & Indus., 123 Wash.2d 803, 816, 872 P.2d 507 (1994) (declining to accept, as legislative intent, a legislative vote rejecting a bill including proposed amendments to five separate sections of the Industrial Insurance Act, four of which had nothing to do with the issue before the court). Finally, the cases relied upon by the State are readily distinguishable. In State v. Jackson, 137 Wash.2d 712, 723, 976 P.2d 1229 (1999), the court found significant the fact that the Legislature enacted a criminal statute pertaining to accomplice liability modeled on a Model Penal Code provision but failed to include in the statute certain language in the model provision. The Legislature's omission of language contained in a model provision otherwise adopted may indicate a deliberate choice to reject the omitted portion. The same is not true here. In Rhoad v. McLean Trucking Co., 102 Wash.2d 422, 686 P.2d 483 (1984), the Legislature repealed a statute in the Worker's Compensation Act providing for a worker's cause of action against a third party, and enacted a replacement statute that did not contain certain language respecting proportionate sharing of fees and expenses that had appeared in the earlier statute. The court reasoned that it must presume the Legislature meant to leave out the language, noting also that where a material change is made in a statute a change in legislative intent is presumed. Again, the situation is unlike that in the present case.[2]
In addition to the change of language in the second degree felony murder statute, decisions relating to felony murder and the statutory scheme as a whole disclose that assault as a predicate felony for felony murder results in much harsher treatment of criminal defendants than was apparent when this court decided Harris. This has become more obvious as various issues have come before the appellate courts of this state, and, in light of the statutory scheme as a whole, we believe the Legislature did not intend this result.
First, as this court recently held, neither degree of manslaughter is a lesser degree of second degree felony murder. State v. Tamalini, 134 Wash.2d 725, 953 P.2d 450 (1998). Thus, the jury is not given the option of considering, in cases involving second degree felony murder with assault as the predicate felony, whether the defendant should be convicted of the lesser crime of first or second degree manslaughter. The Court of Appeals in this case upheld the trial court's refusal to instruct the jury on manslaughter in light of Tamalini State v. Andress, No. 37250-5-I, at 11, 1999 WL 18092 (Wash.App. Jan.19, 1999). In contrast, manslaughter may be a lesser included offense of intentional second degree murder. See State v. Berlin, 133 Wash.2d 541, 551, 947 P.2d 700 (1997).
Additionally, a lesser included offense instruction on assault is normally inappropriate in a felony murder case. Evidence in a case must support an inference that only the lesser crime was committed before a *987 lesser included offense instruction is required as a matter of right. See Berlin, 133 Wash.2d at 548, 947 P.2d 700; State v. Workman, 90 Wash.2d 443, 447-48, 584 P.2d 382 (1978); State v. Lyon, 96 Wash.App. 447, 450, 979 P.2d 926 (1999). Stated somewhat differently, "[i]f the evidence would permit a jury to rationally find a defendant guilty of the lesser offense and acquit him of the greater, a lesser included offense instruction should be given." Berlin, 133 Wash.2d at 551, 947 P.2d 700. Ordinarily, this factual prong of the test for when a lesser included offense instruction is a matter of right cannot be met in a felony murder case to permit a lesser included instruction on assault because the assault has resulted in the death. See Lyon, 96 Wash.App. at 450, 979 P.2d 926.[3]
Thus, in a case where second degree felony murder is charged a jury will rarely have any choice but to convict or acquit on that charge, with no other alternative.
Further, where assault is the predicate felony, the State can elect to charge second degree felony murder rather than second degree intentional murder and thus not have to establish intent to kill, regardless of whether there is evidence of intent to kill. This case is an example, where the alternative charge of second degree intentional murder was dropped, evidently because the State would have had difficulty proving the requisite mental intent given the defendant's level of intoxication.
In addition, first, second, and third degree assault are all felonies, and thus could stand as a predicate felony for second degree felony murder if RCW 9A.32.050(1)(b) is read to include assault. Yet for a number of assaults, no mental element comparable to intent is required. See, e.g., RCW 9A.36.021(1)(c) (second degree assault where a person "[a]ssaults another with a deadly weapon"); RCW 9A.36.031(1)(b) (third degree assault where a person "[a]ssaults a person employed as a transit operator or driver ... while that person is performing his or her official duties"); RCW 9A.36.031(1)(d) (third degree assault where "[w]ith criminal negligence, [the person] causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm"). By electing to charge second degree felony murder, the State may, depending upon the circumstances, be relieved of any burden to prove intent or any comparable mental state. And, of course, by electing to charge second degree felony murder, the State does not have to prove intent to kill, or, indeed, any mental element as to the killing itself.
The present statutory scheme dictates that the jury will not be instructed on any lesser included or lesser degree offenses where the charge is second degree felony murder, in contrast to a charge of second degree intentional murder, where both might be appropriate. In addition, a defendant may be charged and convicted of second degree felony murder without any need for the State to prove intent to kill or any comparable mental element with respect to the assault. Thus, as the recent decisions make clear, the present second degree felony murder statute occupies a place in the homicide statutes more analogous to that of the New York first degree felony murder statute discussed in Harris than recognized at that time.
In this regard we also note that the dissent in Tamalini observed, albeit in connection with the issue in that case:
"A felony-murder rule that punishes all homicides committed in the perpetration of a felony whether the death is intentional, unintentional or accidental, without the necessity of proving the relation of the perpetrator's state of mind to the homicide, violates the most fundamental principle of the criminal law'criminal liability for causing a particular result is not justified in the absence of some culpable mental state in respect to that result.'"
Tamalini, 134 Wash.2d at 746, 953 P.2d 450 (Sanders, J., dissenting) (citing Commonwealth v. Matchett, 386 Mass. 492, 436 N.E.2d 400, 409 (1982) (quoting People v. Aaron, 409 Mich. 672, 708, 299 N.W.2d 304, 328 (1980))). We recognize, of course, that *988 the Legislature may nonetheless intend that a felony murder statute not require proof of a mental element vis à vis the killing. However, under the present statutory scheme, if assault can serve as the predicate felony for the second degree felony murder rule, then a negligent third degree assault resulting in death can be second degree murder, although RCW 9A.32.070 provides that a person who with criminal negligence causes the death of another is guilty only of second degree manslaughter. That makes little sense. We are reluctant to conclude that the Legislature intended that result.[4]
In conjunction with our conclusion that the "in furtherance of" language in RCW 9A.32.050(1)(b) makes no sense if applied where assault is the predicate felony, the undue harshness of using assault as the predicate felony for second degree felony murder persuades us that the Legislature did not intend assault to serve as the predicate felony for second degree felony murder. Accordingly, we construe the 1976 version of the second degree felony murder statute so as to avoid strained and absurd results, and conclude that assault is not a predicate felony for purposes of RCW 9A.32.050(1)(b).
This holding is consistent with the State's concession that manslaughter cannot serve as the predicate felony for second degree felony murder. Suppl. Br. of Resp't at 6 n. 1 ("[i]t is axiomatic that manslaughter cannot be the predicate for felony murder[,]") (citing Wayne R. LaFave & Auston W. Scott Jr., SUBSTANTIVE CRIMINAL LAW, § 7.5(g)(1) (2002)). What the State fails to note is that the same treatise cited by the State treats manslaughter and aggravated battery, i.e., felony assaults such as assault with a deadly weapon or that causes great bodily harm, together when discussing whether either should serve as predicate felonies for the felony murder rule.
Andress has met his burden under In re Personal Restraint of Cook, since he was improperly sentenced on a conviction of second degree felony murder. Accordingly, we grant his personal restraint petition on the limited issue of whether assault can serve as the predicate felony for second degree felony murder. We vacate his sentence and remand for resentencing in accord with this decision. Without commenting specifically on this case or any other, we note that whatever considerations may, by statute and decisional law, be taken into account in resentencing generally may be taken into account where a sentence for second degree felony murder is vacated because of the error that occurred here.
ALEXANDER, C.J., and SMITH, JOHNSON, and SANDERS, JJ., concur.
IRELAND, J. (dissenting).
The court today reexamines the argument that assault cannot be the predicate felony for second-degree felony murder, an argument which we have, for sound reasons, explicitly rejected. This court has consistently declined to apply the merger doctrine to exclude a felonious assault resulting in death as the basis for a second degree felony murder charge. The court should maintain this position in order to give effect to the intent and purpose of the Legislature in creating the second degree felony murder statute. Limstrom v. Ladenburg, 136 Wash.2d 595, 607, 963 P.2d 869 (1998).
Under Washington's felony murder provisions, the Legislature's intent is clear: punish, under the applicable murder statutes, those who commit a homicide in the course or furtherance of a felony. State v. Leech, 114 Wash.2d 700, 708, 790 P.2d 160 (1990); (quoting State v. Wanrow, 91 Wash.2d 301, 308, 588 P.2d 1320 (1978)). The second degree felony murder statute states that a person is guilty when he or she "commits or attempts to commit any felony other than those enumerated in [the first degree felony murder statute]." RCW 9A.32.050(1)(b) (emphasis added). The Legislature has not excluded. *989 "assault" from the express statutory language. This court cannot assume that the felony murder rule was not meant to apply in instances where the underlying felony is assault. Applying the merger doctrine to RCW 9A.32.050(1)(b) overrides the legislative intent clearly expressed in the statute and results in "an invasion of legislative power to define crimes." Wanrow, 91 Wash.2d at 309, 588 P.2d 1320.
This court first declined to apply the merger doctrine to the second degree felony murder statute over 35 years ago in State v. Harris, 69 Wash.2d 928, 421 P.2d 662 (1966). Until now, we have repeatedly rejected invitations to adopt the merger doctrine in this context. See majority at 983-984. The majority contends that the issue bears reassessment because the statute, as examined under Harris and subsequent cases, was revised in 1975 to include the language "in the course of and in furtherance of." RCW 9A.32.050(1)(b); majority at 984-985. Although the majority points out that the revised language has not yet been interpreted in this context, we determined its meaning in State v. Leech. In Leech, the defendant started a fire which resulted in the death of a fire fighter. He was charged with first degree felony murder. The defendant argued that as the death occurred after he had completed the crime, the death could not be "in furtherance" of the arson. The court rejected this contention, stating that such an interpretation would mean that an arsonist whose fire resulted in a death would almost never be charged with felony murder. 114 Wash.2d at 709, 790 P.2d 160. Instead, the court construed the language to mean close proximity in time and distance between the predicate felony and the nonparticipant's death. Id. The language need not be reinterpreted here.
The majority claims to follow Leech, but in fact construes Leech to support the contention that "an assault on the person killed is not encompassed within the newer version of the second degree felony murder statute." Majority at 985. The majority distinguishes assault as a predicate crime from arson on the basis that arson is an independent act:
It is nonsensical to speak of a criminal actan assaultthat results in death as being part of the res gestae of that same criminal act since the conduct constituting the assault and the homicide are the same. Consequently, in the case of assault there will never be a res gestae issue because the assault will always be directly linked to the homicide. Therefore, if the assault were encompassed within the unenumerated felonies in RCW 9A.32.050(1)(b), the "in furtherance of" language would be meaningless as to that predicate felony. In short, unlike the cases where arson is the predicate felony, the assault is not independent of the homicide.
Majority at 985. However, this distinction is misleading. The arson in Leech was not independent of the homicide. Leech committed one crime which resulted in a death Leech did not intend. The same is true for Andress. Although a death resulting from an assault might usually be in proximity in time and place to the assault as the majority notes, the same is true of a death resulting from arson. It is precisely this proximity that supports a charge of felony murder.
One concern shared by proponents of merger is that in order to punish and deter felonies that cause death, the felonious act must be separable from the act that causes death. Assault and felony murder, however, are separable because they are independent acts. Not all assaults result in death, and not all felony murders are caused by assault. The two are distinct crimes. See State v. Tamalini, 134 Wash.2d 725, 732, 953 P.2d 450 (1998) (the manslaughter and felony murder statutes were enacted to proscribe different types of conduct and describe separate and distinct crimes). This position on merger, abandoned today by the majority, has been maintained not because courts are mechanically bound by precedent, but because the law is clear and unambiguous.
The majority also objects to giving the State the choice to charge second degree felony murder with assault as the predicate crime, thereby escaping the need to prove intent to kill as required for a second degree intentional murder charge. While there may be seemingly unfair consequences when a *990 crime not requiring a specific intent, such as third degree assault, is the predicate crime, that issue is not before the court. Such a case is best addressed in the context of its own facts and our lesser included jurisprudence, rather than to anticipatorily abrogate legislative intent for the sake of a hypothetical. The instant case certainly does not fit the hypothetical. Here, Andress elevated the seriousness of his alleged drunken brawl to a felony assault when he formed the specific intent to and did brandish a nine-inch knife to inflict harm on Foster. Under Washington law, using a deadly weapon to cause and inflict serious injury on another is second degree assault. When a felony assault is furthered through such design and precision that it results in the death of a human being, that death is punishable as felony murder.
The court should maintain its position that assault may be the predicate crime for second degree felony murder. To do otherwise is to invade the province of the Legislature and abandon the well-reasoned, established jurisprudence of this court.
OWENS, BRIDGE, and CHAMBERS, JJ., concur.
NOTES
[1] The court has also rejected arguments that the assault-felony murder merger doctrine must be adopted in order to avoid constitutional infirmities in the felony murder statutes. State v. Crane, 116 Wash.2d 315, 333, 804 P.2d 10 (1991); State v. Leech, 114 Wash.2d 700, 712, 790 P.2d 160 (1990); State v. Wanrow, 91 Wash.2d 301, 309-13, 588 P.2d 1320 (1978).
[2] The State also maintains that the Legislature has acquiesced in decisions of this court rejecting the assault-felony murder merger rule. This argument is of little persuasiveness, given that we have never directly addressed the language of the 1976 second degree felony murder statute in this context.
[3] The court in State v. Lyon, 96 Wash.App. 447, 450, 979 P.2d 926 (1999) found a lesser included instruction on assault was appropriate where there was evidence from which the jury could conclude that the death resulted from a later, unrelated assault by another person.
[4] Andress also contends that the harshness of using assault as a predicate felony for second degree felony murder is exacerbated by decisions of the Court of Appeals that Andress characterizes as holding that a victim of assault resulting in death who was involved in a mutual fight is not a "participant" for purposes of the second degree assault statute. E.g., State v. Goodrich, 72 Wash. App. 71, 863 P.2d 599 (1993); State v. Langford, 67 Wash.App. 572, 837 P.2d 1037 (1992); State v. Brigham, 52 Wash.App. 208, 758 P.2d 559 (1988).