# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57286-9-II |
| Respondent, | |
| v. | |
| ADAM WESLEY PEVAN, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, A.C.J. — Adam Wesley Pevan appeals his conviction for attempted second degree burglary. Pevan argues that the prosecutor committed misconduct by (1) impermissibly commenting on his silence, (2) shifting the burden to Pevan, (3) misstating the evidence in the State's favor, and (4) improperly bolstering State witnesses. He further argues that the cumulative effect of repeated improper comments warrant reversal even if each instance does not alone merit reversal. Pevan also claims ineffective assistance of counsel and asks that we remand for the court to strike his $500 crime victim penalty assessment (VPA).

We affirm Pevan's conviction because the claims of misconduct were waived. This is so because Pevan failed to object below and the arguments Pevan identifies were not actually improper, and even if they were improper Pevan cannot show that he was prejudiced by the prosecutor's comments. Furthermore, Pevan has not demonstrated cumulative misconduct warranting reversal. However, we remand for the trial court to reconsider whether to waive Pevan's $500 VPA.

FACTS

On December 5, 2021, Aaron Armga was awakened around 4:00 AM by an alert from his business' security camera. When he watched the recording, he saw someone at the back door of his business wearing dark clothing and carrying a gray backpack. The person was wearing a mask and hood, and their face was not visible. Armga then watched the camera's live feed and saw the individual trying to open the back door of the business, but this portion of the video was not recorded or saved to Armga's phone. Armga's wife called the police while Armga drove to the business to investigate.

Upon arriving at the business, Armga did not see anyone at the back door, but saw a woman nearby. He confronted the woman and they spoke briefly. Then, he saw a man elsewhere in the business park who was wearing dark clothes and a mask and carrying a gray backpack. Armga thought the man looked like the person he saw on his security video, so Armga confronted the man. Armga told the man that police were on the way, and the man fled. At this point, Armga had not seen the back door, but he later returned and found that it was damaged.

Officer Nissen, the only on-duty officer of Yelm Police Department, soon arrived. The first person he saw was Brianna Faulkner, a woman he recognized, and he began questioning Faulkner. Then, Nissen saw a man dressed in dark clothing running toward the post office carrying a backpack. He then saw Armga, who approached him, showed him the video recording, and directed him to the area where Armga had last seen the man. Nissen then called for backup including K9 assistance and perimeter units.

Thurston County Deputy Devin Bagby and tracking dog Jaxx responded to the scene. Jaxx was introduced to the scent at the back door of Armga's business and commanded to track the

person who last touched the door. Bagby chose the back door because it was "uncontaminated" meaning no other odor had been introduced after the suspect tampered with the door. Verbatim Report of Proceedings (VRP) at 416. Jaxx led the officers to the post office parking lot and toward two people, who Nissen recognized from past contacts as Pevan and Faulkner. Pevan was wearing black and Faulkner was carrying the gray backpack. Deputy Bagby shouted at them to stop, and they complied. Faulkner discarded the backpack before she and Pevan walked toward the officers.

When Jaxx was about ten feet away from Faulkner and Pevan, he barked at them to signal he had found the odor he was tracking. Bagby then led Jaxx to the backpack, and Jaxx indicated that the person being tracked had handled the backpack. Officer Nissen searched the backpack and found "[b]olt cutters, a hammer, two small pocket knives, a socket wrench, and a flashlight." *Id.* at 349. He also found Faulkner's credit cards, cosmetics, blank checks, and a check made out to Pevan. After searching the backpack, Nissen placed Pevan and Faulkner under arrest.

The State charged Pevan with attempted second degree burglary. Pevan declared that he did not have money to hire a private attorney and was found indigent for purposes of appointing counsel.

Pevan's case proceeded to trial, where Pevan rested his case without presenting any witnesses or introducing any evidence. In closing, Pevan focused on the possible contamination of the back door and how that would impact Jaxx's ability to track accurately. The State made the following argument without objection from defense counsel:

> [I]f at any time I misstate or reference something that's not in agreement collectively with your memory or notes, it is not intentional. Please defer to your memory and notes.

*Id.* at 467.

3

Again, you are the sole judges of the credibility of those witnesses and what interest they may have. *I would argue they came in and did the best they could*.

*Id.* (emphasis added).

So I'd ask you to consider the evidence and only the evidence that was presented to you, not our argument, not maybes, not could haves, who knows. That's not what you evaluate. You evaluate the evidence.

*Id.* at 491-92.

What we say is not evidence. How many maybes did [defense counsel] use? Maybe. That's not what the evidence was. Could be. That's not what the evidence was.

The evidence before you is that Mr. Armga saw an individual dressed exactly like the defendant was dressed wearing the backpack that he, when he confronted him, still had on his [security] video.

*Id.* at 488.

*Officer Nissen comes and does the best job he can under the circumstances*. He talked about it. Yelm police has low resources right now. There's nobody else. He had to receive some assistance. A perimeter was set up.

*Id.* at 478-79 (emphasis added).

You can have multiple human odor sources on a particular item, and his dog, Jaxx, is trained to differentiate between them. That's the evidence that you'll find. *You don't have evidence of anything other than that.*

*Id.* at 472 (emphasis added).

[Bagby] even testified there could be multiple odor sources. He testified to that. And the olfactory abilities of his dog allows his dog to differentiate. That's the only evidence you have, nothing to the contrary. *That is the only evidence you have in regards to K9 Jaxx.*

*Id.* at 490 (emphasis added).

Deputy Bagby [(handler)] said uncontaminated. The last known uncontaminated area where the suspect was at the back door. When did Mr. Armga say he went to the back door? We know he went when he came back, saw the damage. He testified to that. He testified that when he got there, he actually confronted the individual that he saw on the video still dressed in all black wearing the backpack.

*You don't have any other evidence than that, none.* And he runs away exactly where Jaxx goes, not where Ms. Faulkner went. Where the individual dressed in black wearing the backpack went is where Jaxx went. You have no evidence of where Ms. Faulkner went. You have all the evidence of where the man dressed in black later identified as Mr. Pevan went. It's exactly where Jaxx went.

*Id.* at 489 (emphasis added).

Mr. Armga confronted the defendant at the location of his business wearing the backpack that he observed, the same person trying to pry the door. *That's the evidence you have. That's it.*

*Id.* at 491 (emphasis added).

Now, why the . . . video surveillance system doesn't record when you switch to a live feed, I don't know, but *there's no reason to discount what Mr. Armga said that he saw.* Why? Because he got dressed and got out of bed and went down to his business because what he saw was that same individual prying on the back door of his business, trying to get inside. Why else would he get up at 4 o'clock in the morning and go down if what he said is not accurate?

*Id.* at 468 (emphasis added).

A jury convicted Pevan of attempted second degree burglary. Pevan was sentenced to 4.125 months confinement and ordered to pay a $500 VPA. The court noted that the VPA was required and that it did not have discretion to waive the fee due to indigency. Pevan was again found indigent for the purpose of this appeal.

DISCUSSION

Pevan contends that the prosecutor committed flagrant and ill-intentioned misconduct in closing by (1) commenting on Pevan's exercise of his constitutional right to silence, (2) shifting the burden to Pevan, (3) misstating the evidence in the State's favor, and (4) improperly bolstering police witnesses. In the alternative, he argues that his counsel was ineffective in failing to object to the prosecutor's comments. Finally, Pevan asks that we remand for the $500 VPA to be stricken. We hold that Pevan has shown neither flagrant misconduct or ineffective assistance of counsel,

and therefore affirm his conviction. However, we remand for the court to consider whether to waive the $500 VPA.

## I. PROSECUTORIAL MISCONDUCT

### A. Legal Principles

Prosecutorial misconduct may deprive a defendant of their constitutional right to a fair trial. *State v. Davenport*, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984). In such a claim, the defendant must show (1) that the prosecutor made improper comments and (2) that the comments were prejudicial. *State v. Emery*, 174 Wn.2d 741, 759-60, 278 P.3d 653 (2012). Prejudicial comments are those with a substantial likelihood of affecting the verdict. *Id.* at 760.

We review a prosecutor's comments during closing argument in the context of the entire case. *State v. Thorgerson*, 172 Wn.2d 438, 453, 258 P.3d 43 (2011). Although prosecutors have "wide latitude to argue reasonable inferences from the evidence," they may not shift the burden of proof to the defense or comment on the defendant's failure to present evidence. *Id.* at 443.

Because Pevan failed to object at trial, the errors he complains of are waived unless he establishes that the misconduct was "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. To do so, he must show that (1) no curative instruction would have obviated any prejudicial effect of the misconduct and (2) there is a substantial likelihood that the misconduct affected the jury's verdict. *Id.* at 761. Our primary focus is on whether the prejudice caused by the misconduct could have been cured. *Id.* at 762.

### B. Right to silence and burden of proof

Pevan argues that the prosecutor improperly commented on his silence and improperly shifted the burden of proof. Specifically, he complains that the prosecutor implied the jury had

been provided all of the evidence it could consider and could consider nothing but that evidence (i.e. " '[y]ou don't have any other evidence than that, none,' " and " '[t]hat's the evidence you have. That's it.' "). Br. of Appellant at 24, 26 (quoting VRP at 489, 491).

Pevan first argues that these remarks improperly commented on his silence because Pevan was the only person who could have disputed Armga's account of what occurred. The State responds that the prosecutor's statements were not in reference to the defendant's failure to testify.

The Fifth Amendment of the United States Constitution bars the State from commenting on a defendant's failure to testify at trial. *State v. Lewis*, 130 Wn.2d 700, 704-05, 927 P.2d 235 (1996). We consider two factors to decide whether a prosecutor has improperly commented on the defendant's failure to testify:

> (1) 'whether the prosecutor manifestly intended the remarks to be a comment on' the defendant's exercise of his right not to testify and (2) whether the jury would 'naturally and necessarily' interpret the statement as a comment on the defendant's silence.

*State v. Barry*, 183 Wn.2d 297, 307, 352 P.3d 161 (2015) (internal quotation marks omitted) (quoting *State v. Crane*, 116 Wn.2d 315, 331, 804 P.2d 10 (1991)), *abrogated on other grounds by In re Pers. Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002). Prosecutors generally may state that certain testimony is undenied without commenting on who could have denied it or emphasizing the defendant's silence. *State v. Ramirez*, 49 Wn. App. 332, 336, 742 P.2d 726 (1987); *State v. Fiallo-Lopez*, 78 Wn. App. 717, 729, 899 P.2d 1294 (1995).

When viewed in context, the prosecutor made these comments to argue that Pevan was the same person Armga saw on his security camera footage trying to break into the business. The prosecutor said "[Armga] testified that when he got there, he actually confronted the individual that he saw on the video still dressed in all black wearing the backpack. *You don't have any other*

*evidence than that, none.*" VRP at 489 (emphasis added). The prosecutor continued, "Mr. Armga confronted the defendant at the location of his business wearing the backpack that he observed, the same person trying to pry the door. *That's the evidence you have. That's it.*" *Id.* at 491 (emphasis added).

We disagree with Pevan that he was the only individual who could have contradicted this portion of Armga's testimony. Armga had testified that he saw someone with the same clothing, backpack, and mask that he had seen in the security video. It is true that Pevan could have contradicted this testimony, but so could anyone else who saw the video and saw Pevan's appearance that night. For example, Officer Nissen saw both the video and Pevan's appearance and could have described what he saw.[1] Therefore, it is not clear that the prosecutor manifestly intended to comment on Pevan's failure to testify. Neither is it clear that the jury would naturally and necessarily have interpreted the prosecutor's comments as referring to the defendant's silence. We conclude that the prosecutor did not impermissibly comment on Pevan's silence.

Pevan next argues that the prosecutor's comments shifted the burden of proof to him because the remarks implied to the jury that if Pevan did not produce any evidence, the jury could rely only on the State's evidence rather than rely on any *lack of evidence* in reaching its verdict.

"Generally, a prosecutor cannot comment on the lack of defense evidence because the defendant has no duty to present evidence." *State v. Cheatam*, 150 Wn.2d 626, 652, 81 P.3d 830 (2003). However, prosecutors may discuss the improbability or lack of evidentiary support for the defense theory of the case. *State v. Russell*, 125 Wn.2d 24, 87, 882 P.2d 747 (1994). The "mere

---

[1] Officer Nissen described Pevan's appearance as a male dressed in all black with a backpack and testified to seeing the video.

mention that defense evidence is lacking does not constitute prosecutorial misconduct or shift the burden of proof to the defense." *State v. Jackson*, 150 Wn. App. 877, 885-86, 209 P.3d 553 (2009).

When viewed in the context of the prosecutor's entire argument, the comments did not imply that Pevan had the burden to rebut the State's evidence. Rather, the comments referred to certain pieces of evidence that were undisputed. For example, when the prosecutor said the jury "d[id]n't have any other evidence than that, none," he was indicating that no one contradicted Armga's testimony about Pevan's appearance matching the individual he saw on the video. VRP at 489. The other comment, viewed in context, refers to the same testimony.

Moreover, Pevan, in order to overcome waiver of these claims, must show that these arguments, had they been objected to, could not have been obviated by a curative instruction. Pevan fails to make this showing. The jury was instructed that Pevan had no duty to testify and that his decision not to testify could not be used against him in any way. Had Pevan's counsel believed that a more emphatic or expansive instruction regarding the defendant's silence was needed one could have been given that would have eliminated any potential prejudice.

Likewise, the jury was instructed that the State alone bore the burden of proving the charges beyond a reasonable doubt and that Pevan had no burden of proof. The jury was further instructed that a reasonable doubt could arise from the evidence or the *lack of evidence*. Jurors are presumed to follow the trial court's instructions. *Emery*, 174 Wn.2d at 766. A curative instruction reminding the jury of these principles, even assuming one was needed, could have obviated any potential prejudice from these remarks.

Pevan, for his part, does not even address the curability of these allegedly improper arguments.[2] Because any prejudice engendered by these remarks could have been remedied by a curative instruction, Pevan's claims are waived.[3]

C. Misstatements of the evidence

Pevan contends that the prosecutor misstated key pieces of evidence. He complains that the prosecutor indicated that Armga " 'actually confronted the individual' " that he saw on his surveillance video at the back door of Armga's business. Br. of Appellant at 28 (quoting VRP at 489). In Pevan's view, this incorrectly characterized the facts as if Pevan was caught in the act at the scene of the crime. The State responds that the prosecutor did not say Armga confronted Pevan at the back door, but rather spoke more broadly about the confrontation.

We hold that the prosecutor did not misstate facts and thereby commit flagrant and ill intentioned misconduct. It appears the complained of comments were intended to argue two reasonable inferences: first, that Pevan was the same individual in the video, and second, that

---

[2] Pevan contends that these remarks should be viewed as constitutional error, that prejudice should be presumed, and that this court should apply the overwhelming untainted evidence test from *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985), in evaluating his prosecutorial misconduct claims. Pevan omits, in his brief, that our supreme court in *Emery* expressly rejected the application of the constitutional harmless error test in evaluating prejudice in prosecutorial misconduct claims and has since then repeatedly reaffirmed that the test set forth in *Emery* is the controlling test. *Emery*, 174 Wn.2d at 765; *see State v. Scherf*, 192 Wn.2d 350, 396, 429 P.3d 776 (2018); *State v. Loughbom*, 196 Wn.2d 64, 70, 74, 470 P.3d 499 (2020); *State v. Crossguns*, 199 Wn.2d 282, 299, 505 P.3d 529 (2022). The narrow exception to this rule is found in cases where the prosecutorial misconduct at issue involves improper appeals to racial bias. *State v. Monday*, 171 Wn.2d 667, 680, 257 P.3d 551 (2011). In those cases, "we will vacate the conviction unless it appears beyond a reasonable doubt that the misconduct did not affect the jury's verdict." *Id.*

[3] Furthermore, even if Pevan's prosecutorial misconduct claims were not waived, he would need to show that the improper comments had a substantial likelihood of affecting the jury's verdict. *Emery*, 174 Wn.2d at 760. Because Pevan has not attempted to make this showing, he would not be entitled to relief even if his counsel had objected to the prosecutor's comments.

Armga did not contaminate the back door of the business with his odor before Jaxx began tracking. The first inference is reasonable because Armga testified that Pevan's appearance and clothing matched what Armga saw on the video. The second inference is clear only with additional context. The prosecutor argued:

> Deputy Bagby [(handler)] said uncontaminated. The last known uncontaminated area where the suspect was was at the back door. When did Mr. Armga say he went to the back door? We know he went when he came back, saw the damage. He testified to that. He testified that when he got there, he actually confronted the individual that he saw on the video still dressed in all black wearing the backpack. You don't have any other evidence than that, none. And he runs away exactly where Jaxx goes, not where Ms. Faulkner went. Where the individual dressed in black wearing the backpack went is where Jaxx went. You have no evidence of where Ms. Faulkner went. You have all the evidence of where the man dressed in black later identified as Mr. Pevan went. It's exactly where Jaxx went.

VRP at 489-90.

In reviewing the testimony, "when he came back" refers to Armga returning to the back door of the business after interacting with Pevan, Faulkner, and police officers. See *id.* at 297-98. The statement "when he got there" refers to Armga circling to the front of the business park and confronting Pevan, who was wearing dark clothing and a gray backpack. *See id.* at 292-93. This would have been reasonably clear to the jury because Pevan's closing argument focused on Jaxx's tracking and suggested that both Armga and Faulkner could have left odors on the back door. Therefore, the complained of comments refer not to the location of the confrontation, but rather argue the reasonable inference that Jaxx was tracking the scent of whoever attempted to break into the back door of the business. The prosecutor did not misstate the evidence.

Moreover, even if the prosecutor misstated evidence, he mitigated any prejudice by reminding the jury that attorney comments are not evidence and explaining, "if at any time I misstate or reference something that's not in agreement collectively with your memory or notes,

11

it is not intentional. Please defer to your memory and notes." *Id.* at 467. And any potential prejudice engendered by these remarks could have been remedied by a curative instruction. Therefore, Pevan's contention that the prosecutor misstated evidence is waived.

D. Bolstering

Pevan argues that the prosecutor improperly bolstered the testimony of State witnesses. He complains that the prosecutor said " 'Officer Nissen comes and does the best job he can under the circumstances. He talked about it. Yelm police has low resources right now. There's nobody else.' " Br. of Appellant at 37 (quoting VRP at 478-79). Further, he complains that the prosecutor said "there's no reason to discount what Mr. Armga said that he saw" in the unrecorded live feed. VRP at 468. He also takes issue with the prosecutor's comment that the witnesses " 'came in and did the best they could.' " *Id.* at 36 (quoting VRP at 467). The State responds that the prosecutor was simply restating the evidence and inferences that could be made from it.

A prosecutor may not express their personal opinion or belief about the credibility of a witness. *Thorgerson*, 172 Wn.2d at 443. However, prosecutors may argue the credibility of witnesses if based on reasonable inferences from the evidence. *Id.* at 448. The jury is the sole judge of whether a witness's testimony is credible, and the jury was plainly instructed as such. *Id.* at 443-44.

Here, the statements taken in context do not express the prosecutor's personal opinion about witness credibility. When the prosecutor said "Officer Nissen comes and does the best job he can under the circumstances," the comment in context referred to Nissen's testimony that he was the only officer on duty and had to call for backup. VRP at 478. When the prosecutor said "there's no reason to discount what Mr. Armga said that he saw" the prosecutor was arguing a

reasonable inference based on the fact that no witness contradicted Armga's testimony and that Armga's actions were consistent with what he said he saw on the live feed. *Id.* at 468. And finally, the comment that witnesses "came in and did the best they could" came immediately after informing the jury, "you are the sole judges of the credibility of those witnesses and what interest they may have." *Id.* at 467.

We agree with the State that the prosecutor did not improperly bolster State witnesses, and even if it did Pevan has not shown that the bolstering could not have been remedied by a curative instruction.[4] Furthermore, Pevan has not shown a substantial likelihood that this alleged misconduct affected the jury's verdict in light of the substantial evidence pointing to Pevan's guilt. Thus, this prosecutorial misconduct claim is waived.

E. Cumulative Effect of Misconduct

Pevan argues that the cumulative effect of repeated instances of improper remarks warrant reversal even where each one, standing alone, would not warrant reversal. We reject this invitation to reverse because the prosecutorial misconduct claims, as we note above, are waived. They are waived both because the remarks in question were not improper (which also negates any assertion that their cumulative effect warrants reversal), and because even if they were, any prejudice could have been obviated by a curative instruction.

---

[4] Here again, if Pevan had overcome waiver by demonstrating that the prosecutor's remarks could not have been obviated by a curative instruction, he would still need to show a substantial likelihood the misconduct affected the verdict. *Emery*, 174 Wn.2d at 760. Despite the occasional conflation of these principles in case law, these are different showings. *State v. Gouley*, 19 Wn. App. 2d 185, 201, 494 P.3d 458 (2021), *review denied*, 198 Wash. 2d 1041 (2022) (citing *Emery*, 174 Wn.2d at 764 n.14). Because Pevan has not attempted to make this showing, he would not be entitled to relief even if his counsel had objected to the prosecutor's comments.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Pevan contends that defense counsel's failure to object to the instances of alleged misconduct he identifies above constituted ineffective assistance of counsel. A defendant arguing ineffective assistance of counsel must show (1) deficient representation and (2) prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Deficient representation is that which falls below an objective standard of reasonableness in the circumstances. *Id.* Prejudice requires showing a reasonable probability that but for counsel's errors, the proceeding would have a different result. *Id.* at 335.

We begin with a strong presumption that counsel's performance was effective and we examine the entire record below to determine if counsel was ineffective. *Id.* Having found no instances of improper argument by the prosecutor, we hold that counsel did not perform deficiently in declining to object to the prosecutor's remarks. We therefore reject Pevan's claim of ineffective assistance of counsel.

We affirm Pevan's conviction.

## III. CRIME VICTIM PENALTY ASSESSMENT

Effective July 1, 2023, courts may not impose the VPA on indigent defendants. RCW 10.01.160(3). Courts also must waive any previously imposed VPA on the motion of an indigent defendant. RCW 7.68.035(5)(b). Although this change in the law took effect after Pevan's resentencing, it applies to Pevan because this case is on direct appeal. *See State v. Ramirez*, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018).

Pevan declared that he did not have money to hire a private attorney and was found indigent for purposes of appointing counsel.[5] The State does not concede that Pevan is indigent and notes that no finding of indigency was made at the time of sentencing, but does not oppose remand for consideration of the VPA issue. Further, the record contains insufficient evidence for us to determine whether the court would have found him indigent based on the operative definition of indigency if it considered the question at that time. *See* RCW 7.68.035(5)(b), RCW 10.01.160(3), 10.101.010(3)(a)-(c). We therefore must remand[6] for the court to consider whether to waive Pevan's VPA pursuant to RCW 7.68.035(5)(b).

CONCLUSION

We affirm Pevan's conviction but remand for the court to determine whether to waive Pevan's VPA pursuant to RCW 7.68.035(5)(b).

---

[5] Pevan also indicated that he received some form of public assistance, but it is not clear what assistance he received so we cannot determine whether he meets the criteria in RCW 10.101.010(3)(a).

[6] Rather than remanding to strike the fee, the statutes require us to remand for consideration of the issue. We cannot rely on the orders appointing counsel because counsel could have been (and appears likely to have been) appointed based on statutory criteria that is specifically excluded from the relevant definition of indigency.

The operative VPA statute, RCW 7.68.035(5)(b), incorporates the definition of indigent contained in RCW 10.01.160(3). Subsection (a) of that definition, in turn, refers to the indigency criteria contained in RCW 10.101.010(3)(a)-(c), but excludes RCW 10.101.010(3)(d) ("Unable to pay the anticipated cost of counsel for the matter before the court because his or her available funds are insufficient to pay any amount for the retention of counsel.").

Although the record contains three orders appointing counsel, it contains only one screening form, on which Pevan indicated that he did not have money to hire a private attorney. Therefore, counsel appears to have been appointed pursuant to the criteria contained in RCW 10.101.010(3)(d), under which Pevan would not qualify for the VPA waiver. Pevan did not fill out the portion of the form that asked about his employment, income, assets, dependents, or expenses, so we cannot rely on another part of the relevant definition.

No. 57286-9-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, A.C.J.

We concur:

LEE, J.

PRICE, J.