155 P.3d 962 (2007)
STATE of Washington, Respondent,
v.
Jacob GAMBLE, Appellant.
No. 34125-5-II.
Court of Appeals of Washington, Division 2.
April 10, 2007.
*964 Lisa Elizabeth Tabbut, Longview, WA, for Appellant.
Michael C. Kinnie, Vancouver, WA, for Respondent.
QUINN-BRINTNALL, J.
¶ 1 Jacob Gamble and Ryan May killed Daniel Carroll. A jury originally convicted Gamble of second degree felony murder based on the predicate offense of second degree assault of Carroll. We vacated that conviction after our Supreme Court held in In re Personal Restraint of Andress, 147 Wash.2d 602, 56 P.3d 981 (2002), that felony murder could not be based on the predicate offense of second degree assault. State v. Gamble, 118 Wash.App. 332, 72 P.3d 1139 (2003) (Gamble II). The case was remanded and, on November 16, 2005, a second jury found Gamble guilty of first degree manslaughter. Following the new exceptional sentencing procedures established by the legislature in RCW 9.94A.537 (Laws of 2005, ch. 68, § 4), the jury found an aggravating sentencing factor, and the trial court imposed an exceptional sentence above the standard range. Gamble appeals his conviction and his exceptional sentence.
¶ 2 Gamble's central arguments are that the double jeopardy provisions of the federal and state constitutions and procedural rules requiring the joinder of related offenses mandate the dismissal of the first degree manslaughter charge related to his killing of Carroll. He also argues that (1) the trial court erred when it refused to give his proposed lesser included offense instruction on second degree manslaughter; (2) the facts did not support the aggravating factor the jury found; and (3) the trial court lacked the authority to impose the exceptional sentence. Holding that (1) the new charges did not implicate double jeopardy; (2) the "ends of justice" exception to the mandatory joinder rule applies and allows trial following remand; (3) the trial court did not err in refusing to give Gamble's proposed lesser included offense instruction; (4) the evidence supported the jury's aggravating factor finding; and (5) the trial court had the authority to impose the exceptional sentence, we affirm.

FACTS
BACKGROUND
¶ 3 On March 26, 1999, while his parents were out of town, Andrew Young hosted a party for some high school friends including Gamble. By 11:30 p.m., there were over 50 young people at the party; most of them were drinking alcohol or smoking marijuana. State v. Gamble, 154 Wash.2d 457, 460, 114 P.3d 646 (2005) (Gamble III).
¶ 4 That night, Gamble's friend, Kevin Phommahasay, was bragging that he was going to fight Curtis Esteban. When Esteban and his friend, Carroll, arrived at the party, Phommahasay immediately confronted Esteban on the front lawn of the house and hit him on the head with a beer bottle. Gamble III, 154 Wash.2d at 460, 114 P.3d 646. Carroll, who knew that Esteban suffered from seizures, ran toward the fight in an attempt to stop it.
¶ 5 Gamble punched Carroll in the face, knocking him to the ground; Carroll hit his *965 head on the cement sidewalk. As he lay unconscious on the sidewalk, Gamble and May kicked and stomped on Carroll. When they finished the attack, May took Carroll's cell phone. Carroll never regained consciousness, and doctors pronounced him dead five days later on April 1, 1999.
¶ 6 The police arrested Gamble soon after the fight.[1] In a taped statement,[2] Gamble told police that he had become "caught up in the moment" and that he had intentionally punched Carroll. 12C Report of Proceedings at 1193-1211.
PROCEDURAL HISTORY: PRIOR APPEALS
¶ 7 The State charged Gamble with first degree felony murder in the course of a robbery[3] and second degree felony murder with the predicate offense of second degree assault.[4] On February 12, 2000, a jury found him guilty on both counts. Gamble II, 118 Wash.App. at 334, 72 P.3d 1139. In an unpublished opinion, we reversed the first degree felony murder conviction, concluding that the evidence that May took Carroll's cell phone was insufficient to support the predicate crime of robbery necessary to convict Gamble of first degree felony murder as charged. State v. Gamble, 116 Wash.App. 1016, 2003 WL 1298906, 2003 Wash.App. LEXIS 1047 (2003) (Gamble I).
¶ 8 While Gamble's first appeal was pending, our Supreme Court issued Andress. We ordered additional briefing on the impact of Andress on Gamble's case, Gamble III, 154 Wash.2d at 460, 114 P.3d 646, and concluded that Andress required reversal of Gamble's second degree felony murder conviction.[5]Gamble II, 118 Wash.App. at 335-36, 72 P.3d 1139. Holding that first degree manslaughter was a lesser included offense of second degree felony murder when the predicate second degree assault was charged under RCW 9A.36.021(1)(a),[6] we remanded the case back to the trial court with directions that it enter a guilty verdict on the lesser included offense of first degree manslaughter under RCW 9A.32.060(1)(a).[7]Gamble II, 118 Wash.App. at 340, 72 P.3d 1139.
¶ 9 Gamble petitioned our Supreme Court for review. The court accepted the petition for review on the sole issue of whether first degree manslaughter is a lesser included offense of second degree felony murder where assault is the predicate felony. Gamble III, 154 Wash.2d at 462, 114 P.3d 646. Relying in part on cases in which the predicate assault had been charged under a different section of the second degree assault statute, RCW 9A.36.021(1)(c), which required an assault with a deadly weapon, State v. Davis, *966 121 Wash.2d 1, 4, 846 P.2d 527 (1993), and State v. McJimpson, 79 Wash.App. 164, 171-72, 901 P.2d 354 (1995), review denied, 129 Wash.2d 1013, 917 P.2d 576 (1996),[8] the Supreme Court held that second degree felony murder has no lesser included offenses and stated that we had "erroneously remanded for an entry of conviction of first degree manslaughter." Gamble III, 154 Wash.2d at 460, 114 P.3d 646. The court then remanded the case to the trial court for further, unspecified proceedings "in accord with" its decision. Gamble III, 154 Wash.2d at 470, 114 P.3d 646.
REMAND
¶ 10 On remand, the State charged Gamble with second degree intentional murder and, in the alternative, first degree manslaughter. The State also sought an exceptional sentence specifying, under both counts of the information, that Carroll was "particularly vulnerable or incapable of resistance" when Gamble committed the act. Clerk's Papers (CP) at 91. Before trial, Gamble argued that constitutional double jeopardy provisions and mandatory joinder rules required dismissal of the charges. The trial court denied the motion.
¶ 11 Gamble's second trial began on November 7, 2005. Over Gamble's objection, the trial court declined to give his proposed second degree manslaughter instruction holding that, although second degree manslaughter was a lesser offense of first degree manslaughter, the evidence presented to the jury did not support such an instruction.
¶ 12 The jury found Gamble guilty of first degree manslaughter. Following the verdict, the trial court orally instructed the jury on the aggravating factor of particular vulnerability based on Carroll being unconscious during a portion of the attack. The jury returned a special verdict finding Carroll was particularly vulnerable. The trial court sentenced Gamble to 102 months and added 48 months to reflect Carroll's particular vulnerability, for a total of 150 months.[9] Gamble again appeals.

ANALYSIS
DOUBLE JEOPARDY
¶ 13 Gamble first asserts that constitutional double jeopardy provisions bar the State from filing intentional murder and first degree manslaughter charges for Carroll's death, arguing that a conviction on either of these charges would result in him being "twice punished for the same offense, homicide." Br. of Appellant at 9. We disagree.
¶ 14 The double jeopardy clause of the Fifth Amendment of the federal constitution and article I, section 9 of the Washington constitution[10] contain three separate constitutional protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. State v. Wright, 131 Wash.App. 474, 478, 127 P.3d 742 (quoting North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)), review granted, ___ Wash.2d ___, ___ P.3d ___, 2007 Wash. LEXIS 139 (Wash. Mar. 8, 2007); see also, State v. Gocken, 127 Wash.2d 95, 100, 896 P.2d 1267 (1995). An accused must "suffer jeopardy *967 before he can suffer double jeopardy." Serfass v. United States, 420 U.S. 377, 393, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975).
¶ 15 But the double jeopardy clause "imposes no limitations whatever upon the power to retry a defendant who has succeeded in getting his first conviction set aside" on any ground other than insufficiency of the evidence because the defendant's appeal is part of the initial or continuing jeopardy. State v. Corrado, 81 Wash.App. 640, 647-48, 915 P.2d 1121 (1996) (quoting Tibbs v. Florida, 457 U.S. 31, 40, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982)); see also United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964); State v. Brown, 127 Wash.2d 749, 756-57, 903 P.2d 459 (1995). Thus, if a defendant's conviction is reversed on trial court errors or legal grounds other than insufficiency of evidence, the State may retry the defendant "for the convicted offense and any lesser included offenses." State v. Anderson, 96 Wash.2d 739, 742, 638 P.2d 1205, cert. denied, 459 U.S. 842, 103 S.Ct. 93, 74 L.Ed.2d 85 (1982).
¶ 16 Here, we reversed Gamble's first degree felony murder conviction because the evidence was insufficient to prove Gamble intended to rob Carroll. Gamble I, 116 Wash.App. 1016, 2003 WL 1298906 at *7, 2003 Wash.App. LEXIS 444 at *8. Thus, double jeopardy clearly bars the State from retrying Gamble for first degree felony murder.
¶ 17 But the evidence of Gamble's intentional assault on Carroll was not insufficientit was overwhelming. We vacated Gamble's second degree felony murder charge solely because the Supreme Court's decision in Andress declared the charge invalid and required that we vacate the jury's verdict as a matter of law. Because we did not reverse Gamble's second degree felony murder conviction for insufficient evidence, constitutional double jeopardy provisions do not bar Gamble's second trial for properly drafted homicide charges and any necessarily included offenses. Corrado, 81 Wash.App. at 647, 915 P.2d 1121 (citing Tibbs, 457 U.S. at 40, 102 S.Ct. 2211).
"ENDS OF JUSTICE" EXCEPTION TO CrR 4.3.1
¶ 18 Gamble next argues that even if double jeopardy does not prohibit retrial, the mandatory joinder rule of CrR 4.3.1(b)[11] prohibits the State from trying him on charges not contained in the original information. Again, we disagree.
¶ 19 Generally, the mandatory joinder rule requires the State to charge all related offenses in a single information. If the State fails to timely charge a related offense, the mandatory joinder rule precludes it from later charging that defendant with the related offense arising out of the same conduct "unless the court determines that . . . the ends of justice would be defeated if the motion [to dismiss for failure to join a related offense] were granted." CrR 4.3.1(b)(3).
¶ 20 In State v. Ramos, 124 Wash.App. 334, 101 P.3d 872 (2004), Division One of this court observed that the Supreme Court's unprecedented ruling in Andress was such an *968 extraordinary circumstance that the ends of justice would be defeated if defendants otherwise properly convicted of second degree felony murder were set free by operation of a court-created procedural rule requiring joinder of related offenses. We agree.[12]
¶ 21 Here, as in Ramos, the State acknowledges that the vacated second degree felony murder and manslaughter charges are related offenses. 124 Wash.App. at 339, 101 P.3d 872. "Offenses are related if they are within the jurisdiction and venue of the same court and are based on the same conduct. `Same conduct' is conduct involving a single criminal incident or episode." Ramos, 124 Wash.App. at 338, 101 P.3d 872 (quoting State v. Watson, 146 Wash.2d 947, 957, 51 P.3d 66 (2002)). But the State argues that the trial court properly invoked the "ends of justice" exception to the mandatory joinder rule to allow the State to, in effect, amend the information on remand to correct a technical charging defect and comply with newly announced law. Thus, a new trial on the properly stated charge could proceed. Ramos, 124 Wash.App. at 339, 101 P.3d 872.
¶ 22 The Ramos court concluded that the Andress decision
abandon[ed] an unbroken line of precedent on a question of statutory construction after more than 25 years is highly unusual, and the decision to do so was certainly extraneous to the prosecutions of [the defendants]. This is not a case in which the State negligently failed to charge a related crime or engaged in harassment tactics. Rather, the State filed charges and sought instructions in accordance with long-standing interpretations of state criminal statutes. The fact that the convictions thus obtained must now be vacated is the result of extraordinary circumstances outside the State's control.
124 Wash.App. at 342, 101 P.3d 872. We agree.
¶ 23 In Andress, the Supreme Court made the extraordinary decision to go behind a facially valid judgment and sentence in a collateral attack and then beyond the plain language of the statute to interpret the legislature's intent 30 years ago when it enacted the second degree felony murder statute. Accordingly, we, like Division One, also hold that this nearly unprecedented procedure triggered the "ends of justice" exception to another procedural rulethe mandatory joinder rule set out in CrR 4.3.1. See Ramos, 124 Wash.App. at 337, 101 P.3d 872; see also, Wright, 131 Wash.App. 474, 127 P.3d 742 (the State's failure to request an intentional murder instruction at the initial trial had no effect on the State's ability to proceed on that alternative and rejecting the defendant's claims under the mandatory joinder rule).
¶ 24 Both the trial court and this court are bound by the Supreme Court's Andress decision. See State v. Hairston, 133 Wash.2d 534, 539, 946 P.2d 397 (1997). CrR 4.3.1, however, grants a trial court the authority to determine when the operation of the mandatory joinder rule would defeat the ends of justice.
¶ 25 It is axiomatic that a defendant has a due process right to notice of the laws with which he must comply. State v. Halstien, 122 Wash.2d 109, 116-17, 857 P.2d 270 (1993). But the people of the State also *969 have a right to the protection of their laws. Accordingly, when the Supreme Court announces a new interpretation of a statute that negates a prior conviction, the ends of justice demand that the people, through their elected prosecutors, have an opportunity to file the appropriate charge and try the defendant for the appropriate crime if the facts of the crime demonstrate that the defendant's acts were equally unlawful under a different statute that existed at the time of the offense. See Dale v. Haeberlin, 878 F.2d 930 (6th Cir.1989) ("fair warning" component of the ex post facto clause and due process requires that a defendant be fully informed as to whether his actions are criminal; key to a fair warning analysis is what the defendant could have anticipated at the time he committed the crime), cert. denied, 494 U.S. 1058, 110 S.Ct. 1528, 108 L.Ed.2d 767 (1990). Gamble's trial for Carroll's death may well be a second or third trial, but it is not a "retrial," because the original charge has been ruled to have been legally defective and, at the defendant's request, has been vacated and the matter remanded to the trial court. See Corrado, 81 Wash.App. at 646-47, 915 P.2d 1121.
¶ 26 Here, the trial court properly relied on Ramos and denied Gamble's motion to dismiss, finding that there were extraordinary circumstances triggering the "ends of justice" exception to the mandatory joinder under CrR 4.3.1. We agree that Andress is such an extraordinary circumstance as to trigger the "ends of justice" exception to the procedural rule-based joinder requirement. Thus, the trial court did not err when it allowed the State to try Gamble on homicide charges that would have been joined in the original information under CrR 4.3.1 if the State had been on notice of the Andress interpretation of the second degree felony murder statute at the time it filed the original charges.
DENIAL OF PROPOSED JURY INSTRUCTION
¶ 27 Gamble also argues that the trial court erred when it refused to instruct the jury on the lesser included offense of second degree manslaughter.[13] The trial court held that, although second degree manslaughter is a lesser included offense of first degree manslaughter, the evidence was insufficient for any jury to have found that Gamble had acted only in a negligent manner when he intentionally punched Carroll and then stomped and kicked him while he was unconscious, thereby causing his death.
¶ 28 A defendant is entitled to an instruction on a lesser included offense if (1) each element of the lesser offense is necessarily included in the charged offense; and (2) the evidence in the case supports an inference that the defendant committed only the lesser crime. Andress, 147 Wash.2d at 613, 56 P.3d 981 (citing State v. Berlin, 133 Wash.2d 541, 548, 947 P.2d 700 (1997); State v. Workman, 90 Wash.2d 443, 447-48, 584 P.2d 382 (1978); State v. Lyon, 96 Wash.App. 447, 450, 979 P.2d 926 (1999), review denied, 140 Wash.2d 1003, 999 P.2d 1260 (2000)). This test is commonly referred to as the Workman test. Gamble argues that he has met both the legal and factual prongs of this test. Again, we disagree.
¶ 29 To satisfy Workman's factual prong, Gamble was required to demonstrate to the trial court that, viewed in the light most favorable to him,[14] the jury could find him guilty of the inferior or lesser offense only. State v. Tamalini, 134 Wash.2d 725, 729, 953 P.2d 450 (1998). The evidence in this case *970 does not support an inference that Gamble committed only second rather than first degree manslaughter.
¶ 30 A person is guilty of first degree manslaughter if he "recklessly causes the death of another person." RCW 9A.32.060(1)(a). "A person is reckless or acts recklessly when he knows of and disregards a substantial risk that a wrongful act may occur and his disregard of such substantial risk is a gross deviation from conduct that a reasonable man would exercise in the same situation." RCW 9A.08.010(1)(c) (emphasis added). A person is guilty of second degree manslaughter "when, with criminal negligence, he causes the death of another person." RCW 9A.32.070(1).
A person is criminally negligent or acts with criminal negligence when he fails to be aware of a substantial risk that a wrongful act may occur and his failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable man would exercise in the same situation.
RCW 9A.08.010(1)(d) (emphasis added). Thus, to establish a person committed only second degree manslaughter, the evidence had to show that he "fail[ed] to be aware of a substantial risk that a wrongful act may occur," and not that he knew of and disregarded "a substantial risk that a wrongful act may occur." RCW 9A.08.010(1)(c), (d) (emphasis added).
¶ 31 Gamble's recorded statement to the police, played to the jury at trial, suggests that Gamble did not intend to kill Carroll. But it clearly establishes that Gamble admitted intentionally punching Carroll and intentionally kicking him in the head. Gamble argues that the jury could find that he failed to be aware that this intentional conduct could result in Carroll's death and find him only criminally negligent. We disagree.
¶ 32 There was no evidence in the record from which the jury could conclude that Gamble was unaware of the potentially deadly consequences of his intentional assaults (punching, kicking, and stomping). Lacking such evidence, no reasonable jury could conclude that someone would be unaware that beating a person until they became unconscious and then continuing to beat that person could potentially kill the beating victim (particularly by kicking him in the head). Recently, our Supreme Court noted that a defendant need not be aware that the person he pushes and causes to fall has an antique china doll in his pocket in order to be liable for restitution for the loss of the item. State v. Hiett, 154 Wash.2d 560, 115 P.3d 274 (2005). Likewise, Gamble need not have been aware that Carroll's skull would break when Gamble intentionally punched him and knocked him onto the concrete.
¶ 33 Thus, the trial court properly declined to instruct the jury on the lesser included offense of second degree manslaughter. State v. Burley, 23 Wash.App. 881, 885, 598 P.2d 428 (upholding court's refusal to provide lesser offense instruction of second degree manslaughter when no evidence in record supported defendant's position), review denied, 93 Wash.2d 1002 (1979).
EXCEPTIONAL SENTENCE
¶ 34 In his Statement of Additional Grounds for Review,[15] Gamble first contends that the evidence did not support the jury's finding on the aggravating factor and that the trial court lacked the authority to impose an exceptional sentence. Again, we disagree.
¶ 35 Any fact that increases the penalty for a crime beyond the prescribed statutory maximum, besides the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. Blakely v. Washington, 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); State v. Hagar, 158 Wash.2d 369, 373, 144 P.3d 298 (2006) (citing Apprendi v. New Jersey, 530 U.S. 466, 476, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)).[16]
*971 ¶ 36 Here, a jury, not the trial court, determined the underlying facts used to support the exceptional sentencethat the unconscious Carroll was particularly vulnerable and unable to defend himself against Gamble's and May's attack because he was lying unconscious on the ground as the two men kicked and stomped him. The jury entered the special verdict finding of Carroll's particular vulnerability or incapacity of resistance. The trial court imposed a sentence of 150 months. The sentence reflected the top of Gamble's standard range, 102 months, and an additional 48 months due to Carroll's particular vulnerability of unconsciousness.
¶ 37 Exceptional sentences violate Blakely when they are based on facts not stipulated to by the defendant or not found by a jury beyond a reasonable doubt. See State v. Suleiman, 158 Wash.2d 280, 143 P.3d 795 (2006); State v. Hughes, 154 Wash.2d 118, 156, 110 P.3d 192 (2005), overruled in part on other grounds by Washington v. Recuenco, ___ U.S. ___, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006). Here, the jury found that Carroll was particularly vulnerable due to being unconscious when Gamble and May kicked and stomped him.
¶ 38 Gamble argues that the jury was required to find that Carroll was vulnerable before he punched him and, therefore, the evidence was insufficient to support the jury's aggravating factor finding. But to determine whether a crime is aggravated, the jury must review the crime as Gamble committed it. If Gamble had punched Carroll and then immediately called for an ambulance, Carroll's unconsciousness would not have made him particularly vulnerable to Gamble's prior assault. But Gamble did not seek medical help and in fact continued to assault and further injure Carroll as he lay unconscious on the sidewalk unable to defend himself from Gamble's repeated blows. This is sufficient evidence to support the jury's finding that Gamble's intentional assault that recklessly caused Carroll's death was aggravated.
¶ 39 Finally, we note that the trial court had the authority to impose an exceptional sentence based on the jury's finding because the statute allowing this procedure postdated his offense and was not available at the time of his first trial. Our Supreme Court recently held that the remedial jury trial procedure proscribed by RCW 9.94A.537 "applies to all sentencing proceedings held since [the statute] was signed into law . . . on April 15, 2005 . . . where trials have not begun or guilty pleas accepted." State v. Pillatos, 159 Wash.2d 459, 465, 480, 150 P.3d 1130 (2007).
¶ 40 We also note that procedural statutes and rules apply on the date they become effective to all pending matters. In re Pers. Restraint of St. Pierre, 118 Wash.2d 321, 326, 823 P.2d 492 (1992) ("A new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final."). Gamble's trial started in November 2005, well after the statute was enacted; thus, it applies here.
¶ 41 Finding no error, we affirm the jury's verdict finding Joseph Gamble guilty of first degree manslaughter for killing Carroll and the court's imposition of an exceptional sentence of 150 months.
We concur: BRIDGEWATER and PENOYAR, JJ.
NOTES
[1] May and Phommahasay were charged and tried separately.
[2] The taped statement was played for the jury at both trials.
[3] RCW 9A.32.030(1)(c)(1).
[4] Former RCW 9A.32.050(1)(b) (1975). In 2003, in response to Andress, the legislature amended this statute to specifically include assault as a predicate offense to felony murder. Laws of 2003, ch. 3, § 2. This amendment is not applicable to this case.
[5] In In re Personal Restraint of Hinton, 152 Wash.2d 853, 100 P.3d 801 (2004), our Supreme Court clarified that Andress applies to anyone convicted of second degree felony murder under former RCW 9A.32.050 (1976) if assault was the predicate felony. The court reasoned that, because the "construction of former RCW 9A.32.050 in Andress determined what the statute had meant since 1976," the former felony murder statute did not establish a crime based on second degree assault. Hinton, 152 Wash.2d at 859, 100 P.3d 801.
[6] RCW 9A.36.021(1)(a) currently defines second degree assault when a defendant "[i]ntentionally assaults another and thereby recklessly inflicts substantial bodily harm," which is identical to the definition in the instruction given in this case. In 1976, a defendant was guilty of second degree assault when he or she "[s]hall knowingly inflict grievous bodily harm upon another with or without a weapon." Former RCW 9A.36.020(1)(b) (1975) (repealed by Laws of 1986, ch. 257, § 9). In 1987, the legislature changed this definition and a defendant was guilty of second degree assault when he "[i]ntentionally assaults another and thereby inflicts substantial bodily harm." Former RCW 9A.36.021(1)(a) (1987). In 1988, the word "recklessly" was added and the current definition of second degree assault was adopted.
[7] RCW 9A.32.060(1) provides that "[a] person is guilty of manslaughter in the first degree when: (a) He recklessly causes the death of another person."
[8] See also, State v. DeRosia, 124 Wash.App. 138, 153 n. 23, 100 P.3d 331 (2004).
[9] The original trial court sentenced Gamble to 320 months for the first degree felony murder conviction that we later vacated due to insufficient evidence. It did not enter a judgment and sentence on the second degree felony murder conviction.
[10] The Fifth Amendment of the United States Constitution provides that a person may not be "subject for the same offense to be twice put in jeopardy of life or limb." Similarly, the Washington Constitution's article I, section 9, provides that a person shall not "be twice put in jeopardy for the same offense."

The federal double jeopardy clause applies to the states through the due process clause of the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Washington courts have interpreted article I, section 9 to be the same as the Fifth Amendment. State v. Gocken, 127 Wash.2d 95, 103, 896 P.2d 1267 (1995) (citing State v. Ridgley, 70 Wash.2d 555, 556, 424 P.2d 632 (1967); State v. Larkin, 70 Wash.App. 349, 352-53, 853 P.2d 451 (1993); State v. Kirk, 64 Wash.App. 788, 790-91, 828 P.2d 1128, review denied, 119 Wash.2d 1025, 838 P.2d 691 (1992)).
[11] CrR 4.3.1(b), Failure to Join Related Offenses, provides in part:

(1) Two or more offenses are related offenses, for purposes of this rule, if they are within the jurisdiction and venue of the same court and are based on the same conduct.
(2) When a defendant has been charged with two or more related offenses, the timely motion to consolidate them for trial should be granted unless the court determines that because the prosecuting attorney does not have sufficient evidence to warrant trying some of the offenses at that time, or for some other reason, the ends of justice would be defeated if the motion were granted. A defendant's failure to so move constitutes a waiver of any right of consolidation as to related offenses with which the defendant knew he or she was charged.
(3) A defendant who has been tried for one offense may thereafter move to dismiss a charge for a related offense, unless a motion for consolidation of these offenses was previously denied or the right of consolidation was waived as provided in this rule. The motion to dismiss must be made prior to the second trial, and shall be granted unless the court determines that because the prosecuting attorney was unaware of the facts constituting the related offense or did not have sufficient evidence to warrant trying this offense at the time of the first trial, or for some other reason, the ends of justice would be defeated if the motion were granted.
[12] To the extent Ramos suggests that double jeopardy prohibited the State from retrying Ramos for second degree felony murder with the predicate felony of assault, see 124 Wash.App. at 338, 101 P.3d 872, we respectfully disagree.

As is the case here, Ramos's second degree felony murder conviction was improper solely because Andress declared the charge invalid, and that conviction was vacated as a matter of law. Andress addressed the sufficiency of the charging documents and the information, not the sufficiency of the evidence supporting the conviction. Thus, the second degree felony murder predicated on assault of the victim charge was invalid based on legal, rather than sufficiency, grounds and double jeopardy does not apply. See Anderson, 96 Wash.2d at 742, 638 P.2d 1205; cf. State v. Hughes, 118 Wash.App. 713, 77 P.3d 681 (2003), review denied, 151 Wash.2d 1039, 95 P.3d 758 (2004) (remand for resentencing on predicate felony of assault charged under RCW 9A.36.021(1)(c) after second degree felony murder conviction reversed under Andress).
Notably, in its later extended discussion of double jeopardy, the Ramos court discussed only the original charge of first degree intentional murder and the lesser included offense of second degree intentional murder, not the lesser included offense of second degree felony murder. 124 Wash.App. at 342-43, 101 P.3d 872.
[13] Gamble's proposed jury instruction provided:

To convict the defendant, Jacob Gamble, of the crime of Manslaughter in the second degree as a lesser included offense of Manslaughter in the First degree each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about March 26, 1999, Jacob Gamble or an accomplice with criminal negligence caused the death of Dan Carroll[.]
(2) That the acts occurred in Clark County, Washington.
If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return the verdict of guilty.
On the other hand, if . . . after weighing all the evidence, you have a reasonable doubt as to any of these elements, then it will be your duty to return a verdict of not guilty.
Suppl. CP at 189.
[14] State v. Fernandez-Medina, 141 Wash.2d 448, 455-56, 6 P.3d 1150 (2000).
[15] RAP 10.10.
[16] In Blakely, the United States Supreme Court clarified its holding in Apprendi, stating that the "`statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at 303, 124 S.Ct. 2531.