# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51803-1-II |
| Respondent, | |
| v. | |
| TRAVIS CHARLES SCHUETTKE, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Travis C. Schuettke appeals his convictions for possession of a stolen motor vehicle and possession of a controlled substance, methamphetamine. Schuettke argues that he received ineffective assistance of counsel because his counsel failed to object to the admission of (1) inadmissible hearsay, (2) a video recording of Schuettke in the back of a police car, and (3) the domestic violence designation on his prior conviction. Schuettke further argues that the trial court erred by providing a jury instruction that misstated the State's burden to prove knowledge and by imposing an unconstitutionally vague community custody condition. Schuettke also challenges the imposition of certain legal financial obligations (LFOs), and has filed a statement of additional grounds (SAG).

We hold that Schuettke fails to show that he was deprived of effective assistance of counsel, and we decline to address the merits of Schuettke's claim of instructional error under RAP 2.5.

We further hold that the trial court did not impose an unconstitutionally vague community custody condition and the challenged LFOs must be stricken. Finally, we conclude that none of the arguments made in Schuettke's SAG warrant reversal.

Accordingly, we affirm Schuettke's convictions and remand for the trial court to strike the challenged LFOs.

FACTS

October 2, 2017, Bradley Hendrickson reported his white work van stolen from inside his workplace warehouse in Tumwater, Washington. Hendrickson's work tools were inside of his van when it was stolen.

On October 6, John Clausen saw Schuettke drive onto his property in a white van. Schuettke, who had stayed on Clausen's property in the past, spent the night on Clausen's property. The next day, Schuettke and Clausen drove to the Scott Lake store in the van and got something to eat.

On October 7, Hendrickson was driving toward Costco and he glanced to the side of the freeway just before the Scott Lake overpass and noticed his white van parked on the side of the road. Hendrickson called 911 and multiple police officers met Hendrickson at a nearby location. Tumwater Police Officer Randall Hedin-Baughn was one officer who responded to Hendrickson's call. The officers escorted Hendrickson back to where he saw his van in the area of the Scott Lake grocery store. Hedin-Baughn approached the van while Hendrickson watched from behind. A man was inside the van laying on his back with his feet hanging outside one of the van's doors. Hedin-Baughn and Hendrickson identified the man as Schuettke.

The license plates had been removed from the van and the van was "torn apart." 1 Report of Proceedings (RP) at 78. Except for a few items, most of Hendrickson's work tools had been removed from the van. Hendrickson noticed his back brace burning in a fire pit with other garbage on the property next to where he found the van.

The police questioned Clausen and Schuettke regarding their knowledge of how the van arrived to the property. Clausen said that Schuettke drove the van onto his property the day before. At some point during Schuettke's stay on the property, Clausen saw Schuettke take items out of the van and burn them in a fire pit in his yard.

Schuettke told Hedin-Baughn that someone had dropped him off at Clausen's property midday the day before, but he couldn't remember who. He said he stayed the night with Lisa Walker inside of her trailer, which was parked on Clausen's property. He heard the van arrive late that evening, but did not see who brought it there. Schuettke then told Hedin-Baughn that he saw the van that morning, and he entered the van to search for the paperwork and to move the van off of Clausen's property.

Hendrickson took possession of his van. When Hendrickson entered the van, he looked between the two front seats and noticed a glass pipe and two lighters. Hendrickson told an officer at the scene, and the officer removed the items. Hendrickson drove the van back to his workplace warehouse. At the warehouse, Hendrickson discovered a pack of cigarettes that contained a bag with a white substance inside. Hendrickson contacted Hedin-Baughn, and Hedin-Baughn went to Hendrickson's workplace to collect the items. A forensic scientist confirmed the white substance inside the bag was methamphetamine.

The State charged Schuettke with possession of a stolen vehicle and unlawful possession of a controlled substance, methamphetamine. The matter proceeded to a jury trial.

At trial, the State questioned Clausen about his observations on October 6 as well as whether he provided a written statement to police at the scene. Clausen testified that he observed Schuettke drive the van onto his property and he provided the police with a written statement. The State introduced Clausen's written statement and the following line of questioning ensued:

[State]: And in that statement, did you indicate that Mr. Schuettke was the one that drove the van onto your property the previous night, on October 6th?
[Clausen]: Yes.
[State]: And did you indicate in the statement that Mr. Scheuttke was burning things out of the van during that day?
[Clausen]: Yes.

*Id.* at 106.

The State introduced a photo of a cigarette pack that Hendrickson found in the van when he returned to the warehouse. Hendrickson and Hedin-Baughn confirmed the cigarette pack portrayed in the photo was the same pack that was discovered in the van. Schuettke's counsel did not object to its admission of the photo into evidence.

Walker testified on behalf of Schuettke. Walker testified that Schuettke told her that Erin Johnson had dropped him off at the Clausen property the night before. Walker also testified that Schuettke had given her a bucket of "nails and stuff," and she gave it to the police. *Id.* at 180. Hendrickson identified the bucket and nails as his.

Johnson also testified on behalf of Schuettke. Johnson testified that she let Schuettke borrow her van, and she gave Schuettke a ride in her van to Clausen's property sometime in the

first week of October 2017, but she could not recall a specific date. Johnson testified that at the time, her license was suspended and she did not have insurance.

Schuettke also testified. Schuettke stated that he borrowed Johnson's van on the morning of October 6. He returned her van, and then Johnson gave him a ride back to Clausen's property. Schuettke stated that he did not tell Hedin-Baughn that Johnson gave him a ride to the property because her license was suspended and she didn't have insurance, and he did not want to get her in trouble. Schuettke testified that he saw Hendrickson's van on the property the next morning, on October 7. Schuettke stated that he opened the door and looked inside the van, but that he never entered the van. Schuettke denied taking any items out of the van or driving the van. On cross-examination, Schuettke stated that he reached inside the van to push the brake in and shift the van into neutral to move it out of the way.

The State questioned Schuettke about his two prior convictions for making a false statement to a public servant and for tampering with a witness.

[State]:      Have you ever been convicted of tampering with a witness?
[Schuettke]:  Yes.
. . . .
[State]:      And was that in relationship to a domestic violence case?
[Schuettke]:  I told my mom, "Please don't go to court [without] me.". . .
[State]:      I didn't ask you what it was about. I asked whether you were convicted of tampering with a witness in a domestic violence case.
[Schuettke]:  Yes.

2 RP at 226-27.

The State sought admission of two video files that were recorded from a camera recording system from Hedin-Baughn's patrol car. After initially objecting to the admission of these videos, Schuettke withdrew his objection following a side bar. The entirety of both video files were admitted into evidence. The State played a small clip of one video. The video depicts Schuettke

5

in the back of the patrol car. In the video, Schuettke states that a person named "Jesse" dropped him off at Clausen's property the day before. Ex. 22, at 4 min., 01 sec. The second video, which was not played at trial, is a recording from a camera mounted on a patrol car and depicts a police officer putting Schuettke in handcuffs.

The State proposed jury instructions, and Schuettke did not object to the proposed instructions. The instructions included the following:

> A person knows or acts knowingly or with knowledge with respect to a fact, circumstance or result when he or she is aware of the fact, circumstance or result. . . .
> If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.

Clerk's Papers (CP) at 17.

The jury found Schuettke guilty of possession of a stolen motor vehicle and possession of a controlled substance, methamphetamine. Schuettke was sentenced to 24 months of confinement and 12 months of community custody. The trial court imposed multiple conditions of community custody, including prohibiting Schuettke from possessing or consuming "controlled substances, including marijuana, without a valid prescription" and associating "with any known users, dealers, or manufacturers of controlled substances." *Id.* at 38 (capitalization omitted). The court also ordered Schuettke to pay a $500 victim penalty assessment, $200 criminal filing fee, and a $100 deoxyribonucleic acid (DNA) collection fee.

Schuettke appeals.

DISCUSSION

I. INEFFECTIVE ASSISTANCE OF COUNSEL

Schuettke argues that his counsel rendered ineffective assistance because his counsel failed to object to the admission of (1) inadmissible hearsay evidence that was used to bolster Clausen's credibility, (2) a video recording of Schuettke in the back of a patrol car that violated Schuettke's rights under Washington's "Privacy Act," ch. 9.73 RCW, and (3) the domestic violence designation on his prior conviction. The State argues that Schuettke's ineffective assistance claims fail because he cannot show that his counsel's failure to object to the evidence was not tactical and even assuming that Schuettke's counsel was deficient, Schuettke cannot show that the deficient performance resulted in prejudice. We agree with the State.

A. LEGAL PRINCIPLES

The right to counsel includes the right to effective assistance of counsel. *State v. Crawford*, 159 Wn.2d 86, 97, 147 P.3d 1288 (2006). To show ineffective assistance of counsel, a defendant must show (1) that defense counsel's conduct was deficient and (2) that the deficient performance resulted in prejudice. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004); *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We do not address both prongs of the test when the defendant's showing on one prong is insufficient. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

To show deficient performance, Schuettke must show that defense counsel's performance fell below an objective standard of reasonableness based on the record established in the proceedings below. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). There is a strong presumption of effective assistance, and Schuettke bears the burden of demonstrating the

absence of a legitimate strategic or tactical reason for the challenged conduct. *Id.* at 336. Decisions on whether and when to object are "classic example[s] of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). "'Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.'" *State v. Johnston*, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007) (quoting *Madison*, 53 Wn. App. at 763). To show prejudice, the defendant must also show that "there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *McFarland*, 127 Wn.2d at 335.

B. HEARSAY

Schuettke argues that his counsel was ineffective by failing to object to the State's improper bolstering of Clausen's credibility by introducing Clausen's out-of-court statement to the police. Schuettke argues that the bolstering testimony was inadmissible under ER 801, there was no possible tactical reason to allow the State to bolster Clausen's testimony, and Schuettke was prejudiced by the improper testimony. The State concedes that the testimony regarding the written statement constitutes inadmissible hearsay,[1] but argues that counsel's failure to object to its admission was a tactical decision, and Schuettke was not prejudiced because the State presented overwhelming evidence against Schuettke. We agree with the State and hold that Schuettke cannot demonstrate prejudice.

During direct examination by the State, Clausen testified that Schuettke drove the van to his property the night before the police arrived. The prosecutor then asked Clausen if the police

---

[1] The State's concession is well taken. There was no basis on which this written statement should have been admitted.

had asked him to provide a written statement about who he observed driving the van to his property. Clausen answered in the affirmative. The State then introduced Clausen's written statement to the police, and the following line of questioning ensued:

> [State]: And in that statement, did you indicate that Mr. Schuettke was the one that drove the van onto your property the previous night, on October 6th?
>
> [Clausen]: Yes.

1 RP at 106. Schuettke did not object.

"Hearsay" is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is inadmissible except as provided by the rules of evidence, other courts, or by statute. ER 802. An out-of-court statement is not hearsay if

> [t]he declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is . . . (ii) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication.

ER 801(d)(1).

Here, the parties agree that Clausen's testimony regarding his out-of-court statement to the police is inadmissible hearsay because the statement was not offered on cross-examination and it was not used to rebut an express or implied charge against the declarant of recent fabrication. ER 801(d)(1)(ii). However, the parties disagree as to whether Schuettke's counsel's failure to object was a tactical decision and whether the failure to object prejudiced Schuettke.

Although the State effectively concedes that the testimony was inadmissible, the State nevertheless argues that the trial court could have properly overruled an objection to its admission under principles set forth in *State v. Hakimi*, 124 Wn. App. 15, 24-25, 98 P.3d 809 (2004). We

disagree. In *Hakimi*, the trial court did not abuse its discretion when allowing bolstering testimony on direct examination because the State presented one witness to the crime, and the witness's credibility was an "'inevitable, central issue'" of the case. *Id.* at 24-25 (quoting *State v. Petrich*, 101 Wn.2d 566, 575, 683 P.2d 173 (1984), *abrogated by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988)). Therefore, the State could reasonably anticipate that Hakimi's defense counsel would attack the witness's credibility. *Id.* at 25-26. In contrast, here, the State presented multiple witnesses to Schuettke's criminal conduct and the credibility of one witness was not the central issue of the case. Hendrickson, Officer Hedin-Baughn, and Clausen were all witnesses to the crime and they all testified against Schuettke.

Assuming without deciding that Schuettke's counsel's failure to object was not a legitimate tactical decision and constitutes deficient performance, Schuettke cannot show that the result of the proceeding would have been different. Schuettke himself acknowledges that his "conviction did not rest solely on Clausen's testimony." Br. of Appellant at 11. Schuettke argues that he was prejudiced because there is a reasonable probability that without the improper testimony, "the jury *might* have agreed Clausen was mistaken." *Id.* (emphasis added).

However, the defendant must show an error "had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. "[N]ot every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id*. Even if the jury agreed that Clausen was mistaken when he observed Schuettke driving the van to his property, the jury would also need to conclude that Clausen was mistaken when he witnessed Schuettke removing items from the van and burning them in his fire pit. This is unlikely because Hendrickson

also saw items of his in Clausen's fire pit, and both Hendrickson and Hedin-Baughn saw Schuettke inside of his van.

We hold that Schuettke fails to show there is a reasonable probability that the result of the proceeding would have been different had defense counsel objected to the inadmissible hearsay.

C. PRIVACY ACT

Schuettke argues that his counsel was ineffective for failing to object to the admission of video recordings of Schuettke's arrest on the grounds that it violated his rights under the Washington Privacy Act. Schuettke contends that any objection by his counsel on this ground would have been sustained and the admission of the video prejudiced him because the video negatively impacted his credibility. The State argues that Schuettke cannot show that any objection by counsel would have been sustained and Schuettke cannot show prejudice. We agree that Schuettke cannot show prejudice.

The Privacy Act prohibits the recording of private conversations without consent of all parties. RCW 9.73.030. However, an exception is carved out for law enforcement officers and other emergency response personnel under certain circumstances. RCW 9.73.090(1). Under RCW 9.73.090(1)(b), "[v]ideo and/or sound recordings may be made of arrested persons by police officers responsible for making arrests or holding persons in custody before their first appearance in court." Among other requirements of subsection (1)(b), officers must inform arrested persons that they are being recorded, indicate what time the recording commences and terminates, and inform the person of his or her constitutional rights. RCW 9.73.090(1)(b).

The statute provides a separate section titled "[s]ound recordings that correspond to video images recorded by video cameras mounted in law enforcement vehicles." RCW 9.73.090(1)(c).

11

Unlike subsection (1)(b), subsection (1)(c) does not require officers to indicate when the recording commences and terminates or inform the subject of the recording of their constitutional rights. RCW 9.73.090. Any recording made in violation of this section is generally inadmissible in a criminal trial. RCW 9.73.050.

The State played one of the two video recordings admitted into evidence at trial, which depicts Schuettke in the back of a patrol car.

Schuettke argues that the video recordings were improperly admitted under subsection (1)(b) because the officer did not indicate when the videos commenced or terminated, and the officer did not inform Schuettke of his constitutional rights. The State disagrees, arguing that the video recordings were subject to subsection (1)(c) and not subsection (1)(b), and the officer fulfilled the requirements set forth under subsection (1)(c) by informing Schuettke that he was being audio and video recorded.

However, we do not address this issue because, even assuming that the videos were improperly admitted under subsection (1)(b), defense counsel was deficient for failing to object and the trial court would have sustained the objection, there is no reasonable probability that the outcome of the trial would have been different had the videos not been admitted.

At trial, the State played the video of Schuettke in handcuffs in the back of the patrol car. In the video, Schuettke told a police officer that "Jesse" brought him to Clausen's property the day before. Ex. 22, at 4 min., 01 sec. Schuettke argues that this prejudiced him because "it is far more likely the jury would have believed Schuettke's version of events" had the jury not seen him in handcuffs and heard his untruthful statement. Br. of Appellant at 14. We disagree because even without the challenged evidence, it is highly unlikely the jury would have found Schuettke credible

because Schuettke's version of the events was inconsistent and uncorroborated. The jury heard testimony that at the scene, Schuettke stated that he could not remember who brought him to the Clausen property. At trial, Schuettke claimed that Johnson gave him a ride to the property. However, Johnson could not remember if she gave Schuettke a ride that day, and Walker testified that she knew that Johnson dropped Schuettke off at the property only because Schuettke told her.

Schuettke also denied entering the van, taking any items out of the van, moving any items from the van, or driving the van. However, as noted above, Hendrickson, Hedin-Baughn, and Clausen witnessed Schuettke inside of the van, and Clausen witnessed Schuettke driving the van and removing items from the van.

Due to the overwhelming evidence of guilt, we hold that Schuettke fails to show that he was prejudiced by the admission of the video files.

## D. DOMESTIC VIOLENCE DESIGNATION

Schuettke argues that his counsel was ineffective for failing to object to the admission of the domestic violence designation on his prior conviction because the designation was inadmissible under ER 609(a).

The State questioned Schuettke about his prior convictions for making a false statement to a public servant and tampering with a witness. When the State questioned him about his conviction of tampering with a witness, the State asked Schuettke whether the conviction related to a domestic violence relationship. Schuettke stated that it did.

Schuettke argues that the "admission of this evidence could only prejudice Schuettke in the eyes of the jury and improperly sway the jury to believe Clausen over him." Br. of Appellant at 19. We decline to address whether Schuettke's counsel was deficient for failing to object to the

State eliciting the domestic violence designation because Schuettke cannot show that there is a reasonable probability that without this evidence, the jury would have found Schuettke credible and the result of the proceeding would have been different.

Unlike the State, Schuettke did not present a consistent, corroborated version of the events, and any prejudicial effect of the domestic violence designation was overshadowed by the proper admission of Schuettke's prior convictions. We hold that Schuettke has not shown that but for counsel's failure to object, the outcome of the proceedings would have been different.

## II. JURY INSTRUCTION

Schuettke argues that the court's instruction defining knowledge violated his right to due process. Schuettke argues that this error is a manifest constitutional error that requires reversal of his conviction. The State argues that we should not review Schuettke's claim of error because it is not a "constitutional error," therefore it cannot be raised for the first time on appeal under RAP 2.5(a). Br. of Resp't at 28. We agree with the State and decline to review Schuettke's claim of error.

### A. PRESERVATION ON APPEAL

A party is required to object to an erroneous instruction in order to afford the trial court an opportunity to correct any error. CrR 6.15(c); *State v. Scott*, 110 Wn.2d 682, 686, 757 P.2d 492 (1988). Generally, a party who fails to object to jury instructions below waives any claim of instructional error on appeal. RAP 2.5(a); *State v. Edwards*, 171 Wn. App. 379, 387, 294 P.3d 708 (2012).

But an appellant does not waive a manifest error affecting a constitutional right by failing to object below. RAP 2.5(a)(3). To merit review on appeal, the appellant bears the burden of

showing that (1) the error is of constitutional magnitude and (2) the error is manifest. RAP 2.5(a)(3); *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). Specifically, "the appellant must 'identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights at trial.'" *O'Hara*, 167 Wn.2d at 98 (alteration in original) (quoting *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007)).

To determine whether the error was manifest, RAP 2.5(a)(3) requires the appellant to show actual prejudice. *O'Hara*, 167 Wn.2d at 99. This requires a "'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Kirkman*, 159 Wn.2d at 935). We focus on whether the error is so obvious on the record that the error warrants appellate review. *Id.* at 99-100.

"Instructional errors do not automatically constitute manifest constitutional error." *State v. Guzman Nunez*, 160 Wn. App. 150, 163, 248 P.3d 103 (2011), *aff'd*, 174 Wn.2d 707, 285 P.3d 21 (2012). However, an instruction that shifts the burden of proof from the State to the defendant is a manifest constitutional error because it violates the defendant's due process right to a fair trial. *O'Hara*, 167 Wn.2d at 100, 103; *Scott*, 110 Wn.2d at 688 n.5. This is because due process requires the State to prove all elements of the crime beyond a reasonable doubt. *State v. W.R.*, 181 Wn.2d 757, 762, 336 P.3d 1134 (2014).

B. CONSTITUTIONAL ERROR

Schuettke argues that the allegedly improper instruction allowed the jury to convict him based on a finding of constructive knowledge rather than actual knowledge. Schuettke argues that this error violated his due process rights because (1) it permitted the jury to find Schuettke guilty without finding actual, subjective knowledge and (2) lowered the State's burden to prove knowledge. In order to obtain review, Schuettke must prove that the court's instruction actually amounted to a constitutional error. Absent constitutional error, we need not analyze whether any error was manifest or harmless. RAP 2.5(a).

Due process requirements are met when a trial court instructs the jury on all elements of an offense and that unless each element is established beyond a reasonable doubt, the defendant must be acquitted. *Scott*, 110 Wn.2d at 690. Jury instructions are adequate if they do not mislead the jury or misstate the law. *State v. Stevens*, 158 Wn.2d 304, 308, 143 P.3d 817 (2006).

The crime of possessing a stolen vehicle requires proof that the defendant knew the car was stolen. RCW 9A.56.140. While the jury may find that the defendant had actual knowledge based on circumstantial evidence, the jury cannot find knowledge because an "'ordinary person in the defendant's situation would have known' the fact in question" or because the defendant "'should have known.'" *State v. Allen*, 182 Wn.2d 364, 374, 341 P.3d 268 (2015) (quoting *State v. Shipp*, 93 Wn.2d 510, 514, 610 P.2d 1322 (1980)).

The trial court instructed the jury that

[a] person knows or acts knowingly or with knowledge with respect to a fact, circumstance or result when he or she is aware of the fact, circumstance or result. . . .
If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.

CP at 17. This instruction is identical to 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 10.02, at 222 (4th ed. 2016) (WPIC).

The language of WPIC 10.02 to instruct the jury on the meaning of knowledge has been upheld repeatedly. *State v. Leech*, 114 Wn.2d 700, 710, 790 P.2d 160 (1990), *abrogated on other grounds by In re Pers. Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002); *see also Allen*, 182 Wn.2d at 372 (instruction given reflected the language of WPIC 10.02 and "correctly stated the law regarding 'knowledge'").

Schuettke argues that WPIC 10.02 improperly permitted the jury to convict him based on constructive knowledge rather than actual knowledge. However, WPIC 10.02 requires the jury find actual knowledge. Under WPIC 10.02, a person "acts knowingly . . . when he or she is aware of that [fact]." Furthermore, in *Allen*, our Supreme Court explained that "[t]o pass constitutional muster, the jury must find actual knowledge but may make such a finding with circumstantial evidence." 182 Wn.2d at 374. WPIC 10.02 allows for such a circumstance because it enables the jury to find *actual* knowledge based on the circumstantial evidence of what a reasonable person in the same situation would believe. Contrary to Schuettke's argument, more specificity is not required.

We hold that the instruction given by the trial court did not misinform the jury on the State's burden to prove knowledge. Therefore, we hold that Schuettke does not identify an error of constitutional magnitude because the trial court's instruction was a correct statement of the law.

### III. COMMUNITY CUSTODY PROVISION

Schuettke argues that the trial court erred when it imposed a community custody condition that bars "associate[ion] with any known users, dealers, or manufacturers of controlled substances"

because the condition violates his rights to due process and freedom of association. CP at 38 (capitalization omitted). The State disagrees, contending that we have already determined that the condition is not unconstitutionally vague, and when the condition is read in context, the condition does not violate Schuettke's First Amendment rights. We agree with the State.

A. LEGAL PRINCIPLES

The trial court can only impose community custody conditions authorized by statute. *State v. Kolesnik*, 146 Wn. App. 790, 806, 192 P.3d 937 (2008). If the trial court had statutory authority to impose a condition, we review the trial court's decision to impose the condition for an abuse of discretion. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). An abuse of discretion occurs when the trial court's imposition of a condition is manifestly unreasonable. *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 678, 425 P.3d 847 (2018). The imposition of an unconstitutional condition is manifestly unreasonable. *Id*.

"A criminal defendant's constitutional rights during community placement are subject to the infringements authorized by the Sentenc[ing] Reform Act [of 1981] ([ch.] 9.94A [RCW])." *State v. Llamas-Villa*, 67 Wn. App. 448, 455, 836 P.2d 239 (1992). A court may order an offender to refrain from "contact with the victim of the crime or a specified class of individuals" or from possessing or consuming controlled substances, including alcohol, or to comply with any crime-related prohibitions. RCW 9.94A.703(2)(c), (3)(b).

The due process vagueness doctrine requires that citizens have fair warning of proscribed behavior. U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3; *State v. Bahl*, 164 Wn.2d 739, 752, 193 P.3d 678 (2008). A community custody condition that does not provide fair warning is unconstitutionally vague. *Bahl*, 164 Wn.2d at 752-53. A community custody condition does not

provide fair warning "if (1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). We do not presume a community custody condition is constitutional. *State v. Sanchez Valencia*, 169 Wn.2d 782, 793, 239 P.3d 1059 (2010).

A condition is not vague merely because a person cannot predict with complete certainty the exact point at which an action would be classified as prohibited conduct. *Sanchez Valencia*, 169 Wn.2d at 793. "[A]ll that is required is that the proscribed conduct is sufficiently definite in the eyes of an ordinary person." *Hai Minh Nguyen*, 191 Wn.2d at 681. However, when a condition affects actions protected by the First Amendment, "a greater degree of specificity" is required. *Padilla*, 190 Wn.2d at 678. The condition "must be reasonably necessary to accomplish the essential needs of the state and public order." *Id*.

## B. "KNOWN" USERS, DEALERS, OR MANUFACTURERS

Schuettke argues that the term "known" is unconstitutionally vague because the term (1) fails to specify who must know that a particular person is a user, seller, or manufacturer of controlled substances and (2) fails to reference when the particular use, deal, or manufacture of drugs may have occurred. The State argues that the term "known" has consistently passed constitutional muster and is not unconstitutionally vague because a person of ordinary intelligence can plainly understand the condition. We agree with the State.

We have recently rejected vagueness challenges to a community custody condition that prohibits association with a "known" specified group of individuals. *State v. Houck*, 9 Wn. App. 2d 636, 643, 446 P.3d 646 (2019); *In re Pers. Restraint of Brettell*, 6 Wn. App. 2d 161, 169, 170,

430 P.3d 677 (2018) (condition prohibiting association with "'known users or sellers of illegal drugs'"). In *Houck*, we held that a community custody condition prohibiting association with known drug users and sellers provided fair warning of proscribed conduct because the "term 'known' qualified that the condition prohibited the *offender's knowing* contact with drug users and sellers." 9 Wn. App. 2d at 645. Because the condition's reach was limited to those known by the offender, the condition was not unconstitutionally vague. *Id*.

Schuettke relies on *City of Spokane v. Neff*, 152 Wn.2d 85, 93 P.3d 158 (2004), to support his argument that the term "known" is unconstitutionally vague because it is unclear who qualifies as a known user, dealer, or manufacturer of controlled substances. There, the court interpreted a city ordinance criminalizing loitering by a "'known prostitute.'" *Neff*, 152 Wn.2d at 87. The court held that the ordinance was unconstitutionally vague because the ordinance did not define the term "known prostitute," therefore the ordinance did not provide any standards for determining "who is a 'known prostitute' and who is not." *Id.* at 91. Thus, the ordinance was unconstitutionally vague because it did not establish standards to be enforced in a nonarbitrary manner. *Id*.

However, unlike *Neff*, we are not interpreting a city ordinance of general applicability. Rather, at issue here is a community custody condition of specific applicability. Making the exact same challenge to a similar community custody condition as that imposed in *Brettell* and *Houck*, Schuettke fails to "cite any cases where 'known,' when used in a community custody condition, refers to the knowledge of anyone other than the offender." *Brettell*, 6 Wn. App. 2d at 169. We consider our precedent to be well decided and dispositive on this issue.

Next, Schuettke argues that the term "known" in the condition is unconstitutionally vague because the condition could also prohibit association with persons that have used, dealt, or

20

manufactured controlled substances in their past.[2]  When interpreting a community custody condition, our objective is to give effect to a statute's plain language when it can be determined from the text.  *Bahl*, 164 Wn.2d at 754.  "[W]e do not add words to statutes where the legislature has chosen not to include them."  *In re Pers. Restraint of Martinez*, 2 Wn. App. 2d 904, 910-11, 413 P.3d 1043 (2018).

*Brettell* rejected an identical challenge to a similar community custody condition prohibiting association with "known users and sellers of illegal drugs."  6 Wn. App. 2d at 169, 170.  Brettell argued that the terms "users and sellers" could refer to past actions.  The court disagreed, holding that the terms only "refer to ongoing current activity."  *Id.* at 169.

The challenged community custody condition here prohibits association with known "users, dealers, or manufacturers of controlled substances."  CP at 38 (capitalization omitted).  Schuettke's argument alters the condition by changing the tense of the condition, therefore encompassing all past users, dealers, and manufacturers when the plain language of the condition prohibits association with only individuals who Schuettke knows to be *currently* using, dealing, and manufacturing controlled substances.  Due to the plain language and the present tense of the condition, we hold that the condition effectively notifies a person of ordinary intelligence what behavior is prohibited.

We give effect to the plain language of the statute and hold that the term "known" is not unconstitutionally vague.

_____

[2] Schuettke makes a similar argument using identical reasoning when challenging the term "controlled substances" and when challenging the condition on First Amendment grounds. Because we dispose of Schuettke's reasoning here, we do not discuss Schuettke's similar challenges to a different term in subsequent sections.

C. "CONTROLLED SUBSTANCES"

Schuettke also argues that the term "controlled substances" is unconstitutionally vague and violates his freedom of association under the First Amendment. Schuettke argues that the condition gives rise to arbitrary enforcement because the condition does not clarify whether a controlled substance is a legal or illegal substance, therefore the condition unlawfully prohibits association with any person who uses, sells, or manufactures legal controlled substances, such as medications that are issued pursuant to a lawful prescription.

The State argues that the term "controlled substance" is not unconstitutionally vague because the definition is set forth in former RCW 69.50.101(e) (2017), and when read in context, the condition prohibits use of only illegal substances. The State argues that the condition does not violate Schuettke's First Amendment rights because it is reasonably necessary to accomplish State goals and discourage further criminal conduct. We agree with the State.

"In deciding whether a term is unconstitutionally vague, the terms are not considered in a 'vacuum,' rather, they are considered in the context in which they are used." *Bahl*, 164 Wn.2d at 754 (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 180, 795 P.2d 693 (1990)). The trial court has the authority to impose these crime-related conditions and associating with individuals who use, possess, or deal with controlled substances is intrinsic and directly related to the crime of possession of a controlled substance, the crime for which Schuettke was convicted. Additionally, "[r]ecurring illegal drug use is a problem that logically can be discouraged by limiting contact with other known drug offenders." *State v. Hearn*, 131 Wn. App. 601, 609, 128 P.3d 139 (2006). The purpose of imposing these conditions on offenders is to discourage further criminal conduct and offer the offender an opportunity for self-improvement. *State v. Riley*, 121

Wn.2d 22, 38, 846 P.2d 1365 (1993); *State v. Letourneau*, 100 Wn. App. 424, 431, 997 P.2d 436 (2000).

The court imposed two crime-related community custody conditions. The court ordered Schuettke to refrain (1) from "possess[ing] or consum[ing] controlled substances . . . without a valid prescription" and (2) from associating "with any known users, dealers, or manufacturers of controlled substances." CP 38 (capitalization omitted). When the challenged condition is read in the context of Schuettke's prohibition from possessing or consuming controlled substances except pursuant to lawfully issued prescriptions and with the legislative purpose to discourage further criminal conduct, it is clear that Schuettke's restriction is aimed at prohibiting contact with other known illegal drug offenders and abusers.

Any imprecision is not likely to expose Schuettke to arrest, but if it does, he has the statutory right to explain that he was visiting an acquaintance who had a medically prescribed controlled substance or was legally employed at a pharmacy. RCW 9.94A.716, .737; *see Llamas-Villa*, 67 Wn. App. at 455-56 (rejecting a challenge to an identical community custody condition after noting the offender would have an opportunity to assert that he did not knowingly associate with individuals who were using, possessing, or dealing controlled substances).

We agree with the State that when the challenged language is read in context, an ordinary person can understand what is prohibited.

IV. LEGAL FINANCIAL OBLIGATIONS

Schuettke challenges the trial court's imposition of a criminal filing fee and DNA collection fee. The State concedes that the challenged fees should be stricken. We accept the State's concession.

23

The legislature recently amended former RCW 36.18.020(2)(h) to prohibit the superior courts from imposing the $200 filing fee on defendants found indigent under RCW 10.101.010(3)(a) through (c). LAWS OF 2018, ch. 269, § 17; *State v. Ramirez*, 191 Wn.2d 732, 746, 426 P.3d 714 (2018). This statutory amendment applies to any case not yet final at the time of its passage. *Ramirez*, 191 Wn.2d at 747.

The trial court found Schuettke was indigent and signed an order of indigency. In light of recent statutory amendments and the court's holding in *Ramirez*, the criminal filing fee imposed on Schuettke is no longer authorized.

A DNA collection fee is mandatory "unless the state has previously collected the offender's DNA as a result of a prior conviction." RCW 43.43.7541; *Ramirez*, 191 Wn.2d at 747. Here, the State concedes that it has already collected Schuettke's DNA. Based on the State's concession, we assume that Schuettke's DNA was previously collected. Because the DNA was previously collected, the collection fee is no longer authorized. We accept the State's concession and remand to the trial court to strike the DNA collection fee.

V. STATEMENT OF ADDITIONAL GROUNDS: INEFFECTIVE ASSISTANCE OF COUNSEL

Schuettke argues that his constitutional rights were violated because he received ineffective assistance of counsel. Schuettke argues that his counsel was ineffective because he (1) failed to prepare a meaningful defense, (2) failed to conduct an investigation, (3) did not object to a possibly biased juror, (4) did not seek dismissal of the controlled substance charge,[3] (5) did not object to the admission of exhibits 18 and 19 into evidence, and (6) failed to argue that Schuettke did not

---

[3] Schuettke states in his SAG that his attorney was ineffective for failing "to object to the controlled substance charge." SAG at 3. Presumably, he means to claim that his attorney performed deficiently by not moving to dismiss the charge.

24

have knowledge that the vehicle was stolen. Schuettke argues that but for counsel's trial deficiencies, his trial would have been different.

A. PRETRIAL EVENTS

Schuettke argues that his counsel was ineffective because he failed to prepare a meaningful defense and failed to conduct an investigation. We disagree.

A defendant's Sixth Amendment right to present a meaningful defense is denied when the defendant is precluded from presenting evidence on highly probative facts. *State v. Jones*, 168 Wn.2d 713, 720-21, 230 P.3d 576 (2010). Such a situation exists when the defendant is not able to testify or otherwise present evidence of facts that are essential to the ultimate issue and equate to the defense's entire argument. *See id.* at 721.

The reviewing court will not consider matters outside the record on direct appeal. *State v. Linville*, 191 Wn.2d 513, 525, 423 P.3d 842 (2018). Issues that require consideration of evidence or facts not in the trial record are more properly the subject of a personal restraint petition. *Id.*

Schuettke's argument regarding his counsel's failure to prepare a meaningful defense relies on evidence outside the record. Therefore, we conclude that we cannot review his claim. *Id.*

Schuettke also argues that his counsel was ineffective because he failed to conduct an investigation. "To provide constitutionally adequate assistance, 'counsel must, at a minimum, *conduct a reasonable investigation* enabling [counsel] to make informed decisions about how best to represent [the] client.'" *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001) (alterations in original) (quoting *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994)).

Schuettke's argument regarding his counsel's failure to conduct a reasonable investigation relies on evidence outside the record. Accordingly, we also conclude that we cannot review his claim. *Linville*, 191 Wn.2d at 525.

B. TRIAL EVENTS

Schuettke argues that his counsel was ineffective because he (1) failed to challenge a possibly biased juror, (2) failed to seek dismissal of his controlled substance charge, (3) failed to object to the admission of exhibits 18 and 19 into evidence, and (4) failed to argue that Schuettke did not have knowledge that the vehicle was stolen. We disagree.

Schuettke argues that his counsel was ineffective for failing to challenge juror no. 9 because he was the son-in-law of a police officer involved in the case. However, this is a mischaracterization of the record. During trial, juror no. 9 indicated that his son-in-law works for the same police department that was involved in the case and told the court that "there is a possibility he would have been on duty on the day in question, but he has no reason to believe that he was or wasn't involved in this case in any way, shape, or form." 1 RP at 82. Schuettke's counsel did not object to juror no. 9's continued participation.

Schuettke also argues that his counsel was ineffective for failing to seek dismissal of the controlled substance charge because the charge was not supported by sufficient evidence.

The failure to seek dismissal of a charge where a motion to dismiss would likely be granted constitutes ineffective assistance of counsel. *Johnston*, 143 Wn. App. at 18. We cannot find prejudice unless there is a reasonable probability that the charge would have been dismissed had trial counsel sought a dismissal. *Id*.

26

Schuettke was charged with unlawful possession of a controlled substance, methamphetamine, under RCW 69.50.4013(1). "To prove unlawful possession of a controlled substance, the State must prove only 'the nature of the substance and the fact of possession.'" *State v. Hathaway*, 161 Wn. App. 634, 645, 251 P.3d 253 (2011) (quoting *State v. Bradshaw*, 152 Wn.2d 528, 538, 98 P.3d 1190 (2004)). Possession can be constructive, which "occurs if the defendant has dominion and control over the item." *Id.* at 646.

Here, Schuettke has not shown that there is a reasonable probability that a motion to dismiss his controlled substance charge would have likely been granted because the State presented sufficient evidence establishing Schuettke's possession of the methamphetamine. Hendrickson, Hedin-Baughn, and Clausen all testified that they saw Schuettke inside of the van. Following Schuettke's possession of the van, Hendrickson testified that he discovered a glass pipe, two lighters, and pack of cigarettes that contained a bag with a white substance inside. The State presented testimony from a forensic scientist who confirmed that the white substance was methamphetamine. Based on the testimony, a jury could reasonably infer that Schuettke placed the methamphetamine inside the van when he had possession of the van.

Therefore, we hold that Schuettke fails to show prejudice because there is not a reasonable probability that his charge would have been dismissed had his counsel sought dismissal. *Johnston*, 143 Wn. App. at 18.

Last, Schuettke argues that he received ineffective assistance of counsel because his counsel failed to argue that Schuettke did not have knowledge that the vehicle was stolen and failed to object to the admission of exhibits 18 and 19 into evidence. Exhibit 18 is a photo of the cigarette

pack that Hendrickson discovered in his van. Exhibit 19 is a photo of a scale used to measure narcotics. Schuettke's counsel did not object to their admission.

Decisions on whether and when to object are "classic example[s] of trial tactics." *Madison*, 53 Wn. App. at 763. There is a strong presumption of effective assistance, and Schuettke bears the burden of demonstrating the absence of a legitimate strategic or tactical reason for the challenged conduct. *McFarland*, 127 Wn.2d at 336. Schuettke's arguments that his counsel was deficient for failing to argue a specific theory of the case and for failing to object to admission of evidence constitute strategic or tactical decisions. Schuettke has not shown, in the record, how his counsel's decisions were not legitimate trial tactics. Accordingly, we reject his claims.

## CONCLUSION

We hold that Schuettke's counsel did not render ineffective assistance by failing to object to the admission of inadmissible hearsay, video recordings of Schuettke's arrest, and the domestic violence designation on Schuettke's prior conviction. We do not review Schuettke's alleged instructional error because it is not a "constitutional" error, therefore it cannot be raised for the first time on appeal under RAP 2.5(a). Accordingly, we affirm his conviction. We also hold that the challenged community custody condition is not unconstitutionally vague and does not violate Schuettke's First Amendment rights. However, we remand to strike the trial court's imposition of a criminal filing fee and DNA collection fee from Schuettke's judgment and sentence.

No. 51803-1-II

In regards to Schuettke's SAG, we hold that Schuettke cannot establish that his counsel was deficient or that he experienced prejudice and decline to review his remaining claims due to an insufficient record on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

SUTTON, P.J.

GLASGOW, J.

29